UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re: Linerboard Antitrust Litigation )
)
) MDL No. 1261
This document relates to: )
)
ALL ACTIONS )

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTORY STATEMENT

Movant La Cie McCormick Canada Co.("McCormick") is the Plaintiff in *La Cie McCormick Canada Co. v. Stone Container Corp. et al.*, Court File No. 43669, a class action lawsuit pending in the Superior Court of Justice, Ontario, Canada. (Statement of Claim, Exh. A to Declaration of Andrea DeKay ("DeKay Decl.") attached hereto.) Like this case, Movant's lawsuit seeks damages from the participants in the conspiracy of multinational linerboard producers who are alleged to have fixed prices between 1993 and 1995. Compare, ¶¶ 39-49 of First Amended and Consolidated Class Action Cpt. ("Class Action Cpt.") herein to ¶¶ 30-32 of Statement of Claim. Unlike this case, Movant's lawsuit is brought on behalf of linerboard purchasers, both direct and indirect, who are located in Canada. DeKay Decl., ¶ II.

McCormick seeks discovery of documents and testimony by the Defendants who manufacture and sell linerboard. The discovery obtained from the Defendants in this case will be of immediate use in Movant's lawsuit. However, the parties to this action have

stipulated to a blanket confidentiality order, entered by this Court, prohibiting dissemination of material disclosed in discovery. Confidentiality Order, Dec. 14, 2000.

In cases like this, litigants in collateral actions have routinely been permitted to seek and obtain discovery materials subject to the restrictions in the protective order. This is precisely the relief that Movant seeks.

Movant therefore respectfully requests that the Court modify the Confidentiality Order so that it may obtain access to documents, interrogatory responses, responses to requests for admission, deposition transcripts and other discovery papers produced by the Defendants in this case on the same terms as the parties to this action. See Proposed Order, attached.[1]

## II. FACTS

The allegations of this case reveal a wide-spread conspiracy by North American linerboard manufacturers to raise, fix, stabilize and maintain linerboard prices in North America, including Movant's home country of Canada. *See generally* Class Action Cpt.; Statement of Claim. ¶¶ 30-32. The participants in the conspiracy include multinational companies and their subsidiaries who operate in North America, including Canada.

On March 19, 2004, Movant McCormick filed a class action lawsuit in Ontario, Canada seeking relief on behalf of itself and other Canadian linerboard purchasers (both direct and indirect) based on the same conspiracy at issue in this action.

Class plaintiffs in this case have reached a series of large cash settlements with all of the defendants in this action. This Court granted final approval of these settlements on

---

[1] Movant expressly does not seek access to any materials produced by any plaintiff in this case.

2

April 21, 2004.

The settlement does not provide relief to non-U.S. purchasers of linerboard such as Movant, nor does it purport to release those claims. Notice of Class Action Determination, Proposed Partial Settlement and Final Approval Hearing, April 24, 2003, ¶¶ 1,2.

In McCormick's case, discovery has not yet begun. DeKay Decl., ¶ IV. Under Canadian law, Movant will be entitled to pursue discovery in his case by requesting documents and taking depositions of the defendants in that action. DeKay Decl. ¶¶ IV, V.

### III.   POINTS AND AUTHORITIES

A.   Under Rule 24(b), Movant Should Be Granted Leave to Intervene for the Limited Purpose of Seeking Modification of the Confidentiality Order.

#### 1.   Permissive intervention under Rule 24(b) is the proper means for Movant to seek modification of a protective order.

Rule 24(b), Fed. R. Civ. P., provides that "[u]pon timely intervention anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common." Such a grant of so-called "permissive intervention" is a matter of discretion for the trial court. *See Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir. 1987).

Joining a "forming consensus," the Third Circuit has held that "the procedural device of permissive intervention is appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered in that action." *Pansy v. Borough of Stroudsburg* ("*Pansy*"), 23 F.3d 772, 778 (3d Cir. 1994)(citations omitted).

3

Routinely, courts here and elsewhere have granted parties in collateral litigation the right to intervene for the sole purpose of sharing of discovery materials. *See, e.g., Equal Employment Opportunity Comm'n v. Nat'l Children's Ctr., Inc. ("EEOC")*, 146 F.3d 1042, 1045 (D.C. Cir. 1998); *Wilk v. American Medical Assn. ("Wilk")*, 635 F.2d 1295, 1297 (7th Cir. 1980); *Meyer Goldberg, Inc. v. Fisher Foods, Inc. ("Meyer Goldberg")*, 823 F.2d 159, 162 (6th Cir. 1987); *Grove Fresh Dist. v. Everfresh Juice Co. ("Grove Fresh")*, 24 F.3d 893 (7th Cir. 1994); *Re: What's the Score v. UST, Inc.*, 1999 U.S. Dist. LEXIS 14714 (D.N.J. April 14, 1999); *In re: Baycol Products Litigation*, MDL No. 1431 (D. Minn. May 6, 2003)(Pretrial Order No. 77, available at http://www.mnd.uscourts.gov/Baycol_Mdl/pretrial_minutes/Pretrial_Order_77.PDF).

### 2. Neither an independent basis for jurisdiction nor a case or controversy before this court are required in order to grant permissive intervention for the purpose of modifying a protective order.

The traditional requirements for permissive intervention are: 1) an independent ground for subject matter jurisdiction; 2) a timely motion; and 3) a claim or defense that has a question of law or fact in common with the main action. *EEOC*, 146 F.3d at 1046; *see also Beckman Indus. v. International Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992), *cert. denied* 506 U.S. 868.

However, these requirements are interpreted flexibly when a non-party seeks intervention for the limited purpose of modifying a protective order. First, the intervenor need not demonstrate an independent ground for subject matter jurisdiction. *See Pansy*, 23 F.3d at 778, n.3. That is because "such intervenors do not ask the district court to exercise jurisdiction over an additional claim on the merits, but rather to exercise a power

4

that it already has, namely the power to modify a previously entered confidentiality order." *EEOC*, 146 F.3d at 1047; *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir. 1987).

Similarly, the requirement that a claim or defense present common legal or factual issues to the main action is interpreted "with considerable breadth," *EEOC,* 146 F.2d at 1047; *Pansy,* 23 F.3d at 778 ("The reasoning in *Beckman* is persuasive, and we adopt it."). Courts have regularly held this requirement satisfied if the movant raises a common question in a suit in another jurisdiction. *EEOC*, 146 F.2d at 1047; *Meyer Goldberg*, 823 F.2d at 162; *Kerasotes Michigan Theatres v. National Amusements ("Kerasotes")*, 139 F.R.D. 102, 103-4 (E.D. Mich. 1991).

The requirement of a "timely" motion has also been interpreted broadly in the context of modifying protective orders, with courts granting permissive intervention sometimes years after the main case has been settled and dismissed. *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424 (10th Cir. 1990)(allowing intervention three years after main case was settled); *Kerasotes*, 139 F.R.D. at 103, 106-7. (granting intervention in "this long-settled case"). In *Pansy*, the Third Circuit noted a "growing consensus among the courts of appeals that intervention to challenge confidentiality orders may take place long after a case has been terminated." 23 F.3d at 779 (citing *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157 (3d Cir. 1993)).

In sum, "courts have been willing to adopt generous interpretations of Rule 24(b)" to facilitate "an effective mechanism for third-party claims of access to information generated through judicial proceedings." *EEOC*, 146 F.3d at 1045, citing *Public Citizen v.*

*Liggett Group, Inc.*, 858 F.2d 775, 783.

### 3. Movant's request is appropriate and should be granted.

Movant McCormick meets the requirements for permissive intervention. As in the above-cited cases, Movant asserts jurisdiction based on this Court's power to modify a previously-entered protective order. Movant's request for intervention is certainly timely, coming as it does less than six months after the settlement of this action and of the filing of his collateral case. Finally, Movant meets (indeed, exceeds) the requirement that his action present common facts or legal issues to those presented in this case. Movant's case is based on the identical factual core as this case: the conspiracy, comprised mostly of multinational firms, to raise, fix and stabilize and maintain the prices charged to linerboard purchasers in North America, including Canada.

The fact that Movant is a plaintiff in another jurisdiction should not dissuade the Court from granting intervention. Federal courts have not hesitated to grant sharing of discovery not only with litigants in other federal courts, but also litigants from state and foreign courts *both within and outside the federal court's jurisdiction. See, e.g., In re: Vitamins Antitrust* Litigation, 2001 U.S. Dist. LEXIS 25068 (D.D.C. March 19, 2001)(granting access to litigants from a Canadian court); *Re: What's the Score v. UST, Inc.*, 1999 U.S. Dist. LEXIS 14714 (D.N.J. April 14, 1999) (granting access to litigants from another federal court); *Cohabaco Cigar Co. v. United States Tobacco Co.*, 1999 U.S. Dist. LEXIS 12912 (N.D. Ill. Aug. 12, 1999)(same); *United Nuclear Corp.*, 905 F.2d 1424 (allowing access to litigants in "other state and federal courts"); *EEOC*, 146 F.3d 1042

(granting access to litigant from District of Columbia Superior Court). It would be an exercise of comity for this Court to allow a Canadian plaintiff to obtain access to discovery in furtherance of his Canadian action.[2]

B. <u>Movant's Proposed Modifications to The Protective Order Should Be Granted.</u>

    1.    **Courts traditionally allow litigants in collateral suits to obtain protected materials, so long as the collateral litigation is *bona fide* and the materials sought are relevant to the collateral case.**

Courts have declined to place technical obstacles in the way of litigants who seek to share discovery in related cases, even where discovery has been produced pursuant to a blanket protective order. Non-parties have routinely been granted access to discovery materials for use in their collateral cases. *See, e.g., Cohabaco*, 1999 U.S. Dist. LEXIS 12912 at * 12. *Kraszewski v. State Farm Gen. Ins. Co.*, 139 F.R.D. 156 (N.D. Cal. 1991); *Kerasotes*, 139 F.R.D. at 103, 106-7; *United Nuclear Corp.*, 905 F.2d 1424 (allowing access to litigants in "other state and federal courts"); *Wilk*, 635 F.2d 1295.

Before allowing discovery to be shared, the Court must first consider whether the collateral litigation is *bona fide. Wilk*, 635 F.2d at 1300. The court must also consider "whether the discovery sought will obviate the need for that party to engage in duplicative discovery." *Cohabaco*, 1999 U.S. Dist. LEXIS at *12.

Here, there is no question that Movant is a *bona fide* litigant. There is also no question that Movant will require and be allowed discovery of virtually identical facts as are being inquired into in this case. As under U.S. law, such discovery is permitted in Canada through both document demands and deposition testimony. *See* DeKay Decl. ¶¶ IV, V.

---

[2] The use of any of the materials that McCormick acquires is an issue for the Canadian court to determine.

The fact that Movant will be using the discovery obtained in this action to aid in antitrust enforcement places an especially high value on granting this Motion. *Cf. Meyer Goldberg*, 823 F.2d at 162 ("It is clear that making records available to a party seeking to enforce the antitrust laws to prevent illegal price-setting practices is generally considered to be a matter in which the public has an interest.") Movant is entitled to seek information that may be useful to it in its Canadian antitrust action; there is simply "no reason to erect gratuitous roadblocks in the path of a litigant who finds a trail blazed by another." *Wilk*, 635 F.R.D. at 1301.

2. **The Court need not balance the competing interests of "disclosure" versus "confidentiality" of discovered materials, because Movant merely seek access to the materials under the terms of the agreed Confidentiality Order.**

Suggestive but not controlling are those cases in which members of the public, or of the press, have sought access to discovery materials for their own use. In those cases, the party seeking to protect materials from disclosure has borne the burden to demonstrate prejudice. Upon such a showing, courts have then proceeded to balance the interests of disclosure versus secrecy, bearing in mind the principle that it is important that "the general public be afforded access to discovery materials whenever possible." *Agent Orange*, 821 F.2d at 146.

Where collateral litigants are concerned, however, the balancing test is far simpler. If the defendant's secrecy interest can be preserved by subjecting the intervenor to the terms of the protective order, access should be granted "*even if the need for the protected materials is minimal.*" *Kerasotes*, 139 F.R.D. at 106, (emphasis supplied); *Meyer Goldberg*, 823 F.2d at 163. In cases like this one, when the efficiency of the requested

8

access is high, courts have remedied defendants' secrecy concerns by simply requiring that the intervenor be subject to the terms of the protective order. *Grove Fresh*, 24 F.3d at 896. This is the procedure that Movant proposes here.

Finally, to anticipate any concerns that Defendants may raise regarding the enforceability of the protective order against an intervenor, Movant can and hereby does submit itself to the personal jurisdiction of this Court for purposes of enforcement of the Confidentiality Order.

### 3. Defendants would suffer no prejudice, and significant duplication of discovery would be avoided, by amending the Confidentiality Order to include Movant.

Courts have recognized that significant efficiencies can be gained from sharing discovery between collateral actions. Discovery-sharing should presumptively be granted because, as the Seventh Circuit explained in *Wilk*:

> in addition to the abstract virtues of sunlight as a disinfectant, access in such cases materially eases the tasks of courts and litigants and speeds up what may otherwise be a lengthy process. Particularly in litigation of this magnitude, we . . . are impressed with the wastefulness of requiring the [collateral litigant] to duplicate discovery already made.

635 F.2d at 1299. *See also Kerasotes*, 139 F.R.D. at 106 ("The information in the deposition transcripts could lead to admissible evidence and will probably save significant time and expense in the [collateral action] discovery . . . ."); *Kraszewski*, 139 F.R.D. at 160 ("It simply does not make sense to force class counsel to reinvent the wheel and to promulgate discovery requests and take depositions when much of the same discovery has already taken place in this action.")

9

Defendants can point to no prejudice that they would encounter as a result of Movant's obtaining access to discovery. The only ill effect that Defendants might suffer is the elimination of their ability to keep valuable information from Movant that is likely to be useful to him in his action. However, "Defendants' desire to make it more burdensome for Intervenors to pursue their collateral litigation is not legitimate prejudice." *United Nuclear Corp.*, 905 F.2d at 1428.

It should be emphasized that the relief Movant seeks would not offend Canadian law or Ontario procedure, which allow broad discovery of relevant facts in civil cases. *See* DeKay Decl. ¶¶ IV, V. And Canadian courts in similar circumstances have refused to enjoin efforts by Canadian plaintiffs to obtain the fruits of discovery in U.S. litigation. *Id.* at ¶ VIII. Further, both the Ontario rules <u>and</u> this Court's protective order will prevent the unauthorized disclosure of the materials that Movant will obtain. If particular materials to which Movant has access in this case cannot properly be utilized in Movant's Canadian action, that is for the Canadian court to determine. There is thus no basis to require Movant to "reinvent the wheel" by seeking identical information from the identical defendants in its case. *Kraszewski*, 139 F.R.D. at 160.

### 4. Movant should be granted access to documents, deposition transcripts and discovery papers from the Defendants.

Once access to discovery is granted, that access should be on the same terms that are afforded to litigants in the main action. *See Wilk*, 635 F.2d at 1300 ("We conclude that, given [*inter alia*] the close similarity between the [collateral] action and Wilk . . . the State is presumptively entitled to access to all of the *Wilk* discovery on the same terms as the *Wilk* plaintiffs.") The only limitation to be placed on Movant's access to discovery in this

case is that Movant may not "gain information which is relevant to [the collateral action] but wholly irrelevant to this action." *Kraszewski*, 139 F.R.D. at 161.

Subject to this limitation, the most efficient means for Movant to share the fruits of Plaintiffs' common discovery effort regarding linerboard is to allow Movant to review and copy documents, deposition transcripts, interrogatory responses, responses to requests for admission, and other discovery papers produced by the Defendants. Similar grants of access to discovery proceedings have been permitted by other courts and are appropriate here.

## III. CONCLUSION

For the reasons stated, Movant respectfully requests that the Court modify the Confidentiality Order so that it may obtain access to the discovery materials produced by the Defendants in this case on the same terms as the parties to this action. See Proposed Order, attached.

Dated: July 8, 2004

Respectfully submitted,

Nicholas E. Chimicles
Timothy N. Mathews
CHIMICLES & TIKELLIS, LLP
361 West Lancaster Avenue
Haverford, PA 19041
610-642-8500

David W. Stanley
Charles J. LaDuca
CUNEO WALDMAN & GILBERT, LLP

11

317 Massachusetts Avenue, NE
Suite 300
Washington, DC  20002
(202) 789-3960