UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re: Linerboard Antitrust Litigation          )
                                                 )
                                                 )
                                                 )          MDL No. 1261
This document relates to:                        )
                                                 )
ALL ACTIONS                                      )
                                                 )

## DECLARATION OF ANDREA DEKAY

I.      I am an associate with Siskind, Cromarty, Ivey & Dowler <sup>LLP</sup> ("Siskinds"), a 65 lawyer law firm located in London, Ontario. Siskinds is the plaintiff's counsel in linerboard litigation commenced in Ontario. The statement of claim which was commenced in Ontario in February, 2004, alleges *inter alia* that from at least 1993, and continuing until at least the end of 1995, certain companies were involved in an unlawful conspiracy to raise, stabilize and maintain the prices of linerboard throughout North America. See Statement of Claim *La Cie McCormick Canada Co v. Stone Container Corp., et al.* Sup. Ct. of Justice (Ont.) Court File No. 43669, Exhibit A hereto.

II.     The plaintiff in the Ontario action seeks damages, including interest and costs, for corporations and/or individuals who were adversely affected by the conspiracy. Through the Ontario action, the plaintiff seeks to resolve common issues relative to all purchasers of linerboard, corrugated sheets and corrugated containers. There is no parallel authority to *Illinois Brick* in Canada.

III.     The *Competition Act,* R.S.C. 1985, Chap. C-34, is federal legislation which prohibits anti-competitive conduct and facilitates civil remedies for those who suffer damages as a consequence of such behaviour.

> Part IV, section 36(1) of the *Competition Act* provides:
>
> (1) Any person who has suffered loss or damage as a result of
>
> (a) conduct that is contrary to any provision of Part VI, or
>
> (b) the failure of any person to comply with an order of the Tribunal or another court under this Act,
>
> may, in any court of competent jurisdiction, sue for and recover from the person who engaged in the conduct or failed to comply with the order an amount equal to the loss or damage proved to have been suffered by him, together with any additional amount that the court may allow not exceeding the full cost to him of any investigation in connection with the matter and of proceedings under this section.

> Part VI, section 45 of the *Competition Act* provides:
>
> (1) Every one who conspires, combines, agrees or arranges with another person
>
> (a) to limit unduly the facilities for transporting, producing, manufacturing, supplying, storing or dealing in any product,
>
> (b) to prevent, limit or lessen, unduly, the manufacture or production of a product or to enhance unreasonably the price thereof,
>
> (c) to prevent or lessen, unduly, competition in the production, manufacture, purchase, barter, sale, storage, rental, transportation or supply of a product, or in the price of insurance on persons or property, or
>
> (d) to otherwise restrain or injure competition unduly,
>
> is guilty of an indictable offence and liable to imprisonment for a term not exceeding five years or to a fine not exceeding ten million dollars or to both.

IV.     Discovery has not yet taken place in the Ontario action. Rule 30 of the Ontario *Rules of Civil Procedure* outlines the documentary discovery which will be mandated in the Ontario action. See Exhibit B hereto. Under the rule, the plaintiff will be entitled to obtain production of "[e]very document relating to any matter in issue in [the] action that is in the possession, control,

or power of a party to the action" unless a privilege is claimed with respect to the document. The definition of document is broad and includes a "sound recording, videotape, film, photograph, chart, graph, map, plan, survey, book of account and data and information recorded or stored by means of any device". If a party claims that a particular document is privileged, that party is required to list the existence of the document and state the basis for the claim of privilege in an affidavit.

V.      Rule 31 of the Ontario *Rules of Civil Procedure* permits the plaintiff to take an oral examination of each defendant for discovery purposes, once the defendant has delivered its statement of defence. See Exhibit C hereto. The testifying person must answer, to the best of his or her knowledge, information, and belief, "any proper question relating to any matter in issue in the action," including the names and locations of other potential witnesses.

VI.     In order to assist in the pursuit of our Ontario action, we seek access to evidence available in the U.S. litigation, including access to documentary discovery and depositions that have already taken place and that may be available.

VII.    We have reviewed the protective order entered in the U.S. litigation, *In Re Linerboard Antitrust Litigation*, and we agree to abide by the terms of the order with respect to any materials or testimony we may obtain. Upon grant of our motion to intervene in MDL 1261, we submit to the personal jurisdiction of the U.S. District Court for the Eastern District of Pennsylvania for the purpose of enforcing the protective order.

VIII.   Our firm sought similar relief to that sought in the within motion, from the U.S. District Court, District of Columbia in the case titled *In re: Vitamins Antitrust Litig.* MDL 1285. In that case, some of the defendants opposed the plaintiffs' motion and sought to enjoin the plaintiffs from proceeding with their motion. Three courts in Ontario, Superior Court of Justice, Divisional Court and the Court of Appeal of Ontario, refused to grant the relief sought by the defendants.

Leave to appeal to the Supreme Court of Canada from the decision of the Ontario Court of Appeal was denied. See the decisions rendered in *Vitapharm* v. *F. Hoffmann-LaRoche Ltd.* See Exhibit D hereto.


Sworn to before me this 6th day of July 2004.


_____
ANDREA DEKAY


_____
Christina Benedict

# EXHIBIT A

Court File No. 43669

## ONTARIO
## SUPERIOR COURT OF JUSTICE

BETWEEN:

LA CIE MCCORMICK CANADA CO

Plaintiffs

- and -

STONE CONTAINER CORP., JEFFERSON SMURFIT CORP., SMURFIT-STONE CONTAINER CORP., SMURFIT-MBI, formerly known as MACMILLAN BATHURST, UNION CAMP CORP., INTERNATIONAL PAPER CO., INTERNATIONAL PAPER CANADA, INC., also known as INTERNATIONAL PAPER LTD. - CANADA, GEORGIA PACIFIC CORP., GEORGIA-PACIFIC CANADA, INC., WEYERHAEUSER PAPER CO., WEYERHAEUSER COMPANY, WEYERHAEUSER COMPANY LIMITED, formerly known as WEYERHAEUSER CANADA LTD., TEMPLE-INLAND INC., INLAND PAPERBOARD AND PACKAGING, INC., GAYLORD CONTAINER CORP., TENNECO, INC., TENNECO PACKAGING, AND PACKAGING CORPORATION OF AMERICA

Defendants

Proceeding under the *Class Proceedings Act*, 1992

## NOTICE OF ACTION

TO THE DEFENDANTS

**A LEGAL PROCEEDING HAS BEEN COMMENCED AGAINST YOU** by the Plaintiff. The claim made against you is set out in the Statement of Claim served with this Notice of Action.

**IF YOU WISH TO DEFEND THIS PROCEEDING**, you or an Ontario lawyer acting for you must prepare a Statement of Defence in Form 18A prescribed by the Rules of Civil Procedure, serve it on the Plaintiff's lawyer or, where the Plaintiff does not have a lawyer, serve it on the Plaintiff, and file it, with proof of service, in the Court Office, **WITHIN TWENTY DAYS** after this Notice is served on you, if you are served in Ontario.

If you are served in another province or territory of Canada or in the United States of America, the period of serving and filing your Statement of Defence is forty days. If you are served outside Canada and the United States of America, the period is sixty days.

Instead of serving and filing a Statement of Defence, you may serve and file a Notice of Intent to Defend in Form 18B prescribed by the Rules of Civil Procedure. This will entitle you to ten more days within which to serve and file your Statement of Defence.

IF YOU FAIL TO DEFEND THIS PROCEEDING, JUDGMENT MAY BE GIVEN AGAINST YOU IN YOUR ABSENCE AND WITHOUT FURTHER NOTICE TO YOU. IF YOU WISH TO DEFEND THIS PROCEEDING BUT ARE UNABLE TO PAY LEGAL FEES, LEGAL AID MAY BE AVAILABLE TO YOU BY CONTACTING A LOCAL LEGAL AID OFFICE.

Date: FEB 2 0 2004     Issued by: _____

Local Registrar

Address of Court Office:
London Court House
Civil, Landlord/Tenant Section
Group Floor, Unit "A"
80 Dundas Street
London, ON  N6A 6A3

TO: **STONE CONTAINER CORP.**
150 N. Michigan Ave.
Chicago, IL  60601

AND TO: **JEFFERSON SMURFIT CORP.**
8182 Maryland Ave
St. Louis, MO  63105

AND TO: **SMURFIT-STONE CONTAINER CORP.**
150 N. Michigan Ave.
Chicago, IL  60601

AND TO: **SMURFIT-MBI, f/k/a MACMILLAN BATHURST**
2070 Hadwen Road
Mississauga, ON  L5K 2C9

AND TO: **UNION CAMP CORP.**
1600 Valley Rd.
Wayne, NJ  07470

AND TO: **INTERNATIONAL PAPER CO.**
400 Atlantic Street
Stamford, CT  06921

AND TO: **INTERNATIONAL PAPER CANADA, INC. a/k/a INTERNATIONAL PAPER LTD. - CANADA**
1210 Sheppard Ave. East, Suite 405
Willowdale, ON  M2K 1E3

AND TO: **GEORGIA PACIFIC CORP.**
133 Peachtree Street North East
Atlanta, GA  30303

**AND TO:** **GEORGIA-PACIFIC CANADA, INC.**
319 Allanburg Road
Thorold, ON  L2V 5C3

**AND TO:** **WEYERHAEUSER PAPER CO.**
33663 Weyerhaeuser Way South
Federal Way, WA  98003

**AND TO:** **WEYERHAEUSER COMPANY**
33663 Weyerhaeuser Way South
Federal Way, WA  98003

**AND TO:** **WEYERHAEUSER COMPANY LIMITED, f/k/a WEYERHAEUSER CANADA LTD.**
925 West Georgia Street, 2nd Floor
Vancouver, B.C.  V6E 3L2

**AND TO:** **TEMPLE-INLAND INC.**
1300 S. Mopac Expwy
Austin, TX  78746

**AND TO:** **INLAND PAPERBOARD AND PACKAGING, INC.**
4030 Vincennes Road
Indianapolis, IN  46268

**AND TO:** **GAYLORD CONTAINER CORP.**
500 Lake Cook Rd. Ste 400
Deerfield, IL  60015

**AND TO:** **TENNECO, INC.**
1275 King St.
Greenwich, CT  06831

**AND TO:** **TENNECO PACKAGING**
1900 W. Field Ct.
Lake Forest, IL  60045

**AND TO:** **PACKAGING CORPORATION OF AMERICA**
1900 W. Field Ct.
Lake Forest, IL  60045

## CLAIM

The Plaintiff alleges that from at least 1993 and continuing until at least the end of 1995 the Defendants were involved in an unlawful conspiracy to raise, stabilize and maintain the prices of linerboard throughout North America. Linerboard is the principal component of corrugated sheets and containers and therefore, the conspiracy artificially increased the price of corrugated sheets and containers.

The Plaintiff alleges that the Defendants are liable in damages pursuant to section 36 of the *Competition Act,* R.S. 1985, c. 19 (2nd Supp), s.36 as amended, and for tortious conspiracy and intentional interference with economic interests.

The Plaintiff, who purchased various corrugated cardboard products in Ontario, on its own behalf and on behalf of all Canadians who purchased corrugated cardboard including sheets and containers and/or linerboard, which was produced, manufactured, sold and/or distributed by the Defendants, seeks to certify this action as a class proceeding and be appointed as the Representative Plaintiff.

Date: February 18, 2004

Siskinds, Cromarty, Ivey and Dowler LLP
Barristers & Solictors
680 Waterloo Street
London, ON  N6A 3V8

Charles M. Wright  LSUC # 36599Q
Andrea L. DeKay  LSUC #43818M
Tel: (519) 672-2121
Fax: (519) 672-6065

Solicitors for the Plaintiffs

Court File No: 43669

La Cie McCormick Canada Co. v. Stone Container Corp. et al.

*ONTARIO*
SUPERIOR COURT OF JUSTICE

Proceeding commenced at London

NOTICE OF ACTION

**Siskind, Cromarty, Ivey & Dowler** LLP
680 Waterloo Street
London, ON  N6A 3V8

Charles M. Wright (LSUC # 36599Q)
Andrea L. DeKay (LSUC #43818M)
Tel: (519) 672-2251
Fax: (519) 672-6065

Solicitors for the Plaintiff

Court File No. 43669

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE

B E T W E E N:

### LA CIE MCCORMICK CANADA CO.

Plaintiff

- and -

STONE CONTAINER CORP., JEFFERSON SMURFIT CORP., SMURFIT-STONE
CONTAINER CORP., SMURFIT-MBI, formerly known as MACMILLAN BATHURST, UNION
CAMP CORP., INTERNATIONAL PAPER CO., INTERNATIONAL PAPER CANADA, INC., also
known as INTERNATIONAL PAPER LTD – CANADA,  GEORGIA PACIFIC CORP., GEORGIA-
PACIFIC CANADA, INC.,  WEYERHAEUSER PAPER CO., WEYERHAEUSER COMPANY,
WEYERHAEUSER COMPANY LIMITED, formerly known as WEYERHAEUSER CANADA
LTD., TEMPLE-INLAND INC., INLAND PAPERBOARD AND PACKAGING, INC, GAYLORD
CONTAINER CORP., TENNECO, INC., TENNECO PACKAGING, and PACKAGING
CORPORATION OF AMERICA

Defendants

Proceeding under the *Class Proceedings Act*, 1992

## STATEMENT OF CLAIM

Notice of Action issued on February 20, 2004

1.      The Plaintiff, on its own behalf, and on behalf of persons similarly situated in Canada

who were overcharged as a result of the linerboard conspiracy described herein, claim:

(a)     an order certifying this action as a class proceeding and appointing the Plaintiff
as representative Plaintiff;

(b)     general damages for conspiracy in the amount of $25,000,000.00;

(c)     general damages for intentional interference with economic relations in the
amount of $25,000,000.00;

(d)     general damages for conduct that is contrary to Part VI of the *Competition Act*,
R.S. 1985, c. 19 (2nd Supp.), s.36, in the amount of $25,000,000.00;

(e)     punitive and exemplary damages in the amount of $10,000,000.00;

- 2 -

(f)     pre-judgment interest calculated at 10% and compounded annually or at such other rate this Honourable Court deems just;

(g)     costs of this action pursuant to the *Class Proceedings Act, 1992*, S.O. 1992, c.6 and section 36 of the *Competition Act* or alternatively, as between a solicitor and his or her own client; and

(h)     such further and other relief as this Honourable Court seems just.

**Plaintiff**

2.     La Cie McCormick Canada Co. ("McCormick") is currently an extra provincial corporation carrying on business in Ontario. During the timeframe of the conspiracy, McCormick was a registered Ontario corporation. McCormick manufactures a wide variety of food products. At all relevant times, McCormick maintained manufacturing facilities in London, Ontario, and Mississauga, Ontario, and purchased various corrugated cardboard products in Ontario.

**Defendants**

3.     Defendant Stone Container Corp. ("Stone Container") is a Delaware corporation with its principal place of business in Chicago, Illinois.  At all relevant times, Stone Container manufactured, distributed and/or sold linerboard, corrugated sheets and corrugated containers in North America directly, or indirectly through an agent, subsidiary or affiliate.

4.     Defendant Jefferson Smurfit Corp. ("Jefferson Smurfit") is a Delaware corporation with its principal place of business in St. Louis, Missouri. At all relevant times, Jefferson Smurfit manufactured, distributed and/or sold linerboard, corrugated sheets and corrugated containers in North America directly, or indirectly through an agent, subsidiary or affiliate.

- 3 -

5.   Defendant Smurfit-Stone Container Corp. ("Smurfit-Stone") is a Delaware corporation with principal places of business in Chicago, Illinois and Clayton, Missouri. Smurfit-Stone was formed in November, 1998 by a merger of Defendant Stone Container and Jefferson Smurfit. Smurfit-Stone is the successor in interest to Stone Container and Jefferson Smurfit and is liable for their actions as alleged herein.

6.   Defendant Smurfit-MBI, formerly known as MacMillan Bathurst Inc. is a limited partnership registered in Ontario ("MBI"). At all relevant times, Smurfit-MBI manufactured, sold and/or distributed linerboard, corrugated sheets and corrugated containers in Canada.

7.   The business of each of Stone Container, Jefferson-Smurfit, Smurfit-Stone and Smurfit-MBI is inextricably interwoven with that of the others and each is, and/or was, during the period of the conspiracy the agent of the others for the purposes of the manufacture, sale and distribution of linerboard, corrugated sheets and corrugated containers and for the purposes of the conspiracy described hereinafter.

8.   Defendant Union Camp Corp. ("Union Camp") is a Virginia corporation with its principal place of business in Wayne, New Jersey. At all relevant times, Union Camp manufactured, sold and/or distributed linerboard, corrugated sheets and corrugated containers in North America. In April, 1999, Union Camp was acquired by Defendant International Paper Co.

9.   Defendant International Paper Co. ("International Paper") is a U.S. corporation with its headquarters in Stamford, Connecticut. At all relevant times, International Paper manufactured, sold and/or distributed linerboard, corrugated sheets and corrugated containers in North America directly, or indirectly through an agent, subsidiary or affiliate.

- 4 -

International Paper acquired Defendant Union Camp effective April, 1999. International Paper is the successor in interest to Union Camp and is liable for its actions as alleged herein.

10.    Defendant International Paper Canada Inc. also known as International Paper Ltd - Canada ("International Canada") is a corporation registered in Ontario. At all relevant times, International Canada manufactured, sold and/or distributed linerboard, corrugated sheets and corrugated containers in Canada directly, or indirectly through an agent, subsidiary or affiliate.

11.    Defendant Georgia-Pacific Corp. ("Georgia-Pacific") is a Georgia corporation with its principal place of business in Atlanta, Georgia. At all relevant times, Georgia-Pacific manufactured, sold and/or distributed linerboard, corrugated sheets and corrugated containers in North America directly, or indirectly through an agent or affiliate.

12.    Georgia-Pacific Canada, Inc. ("Georgia Pacific Canada") is a corporation registered in Ontario. At all relevant times, Georgia-Pacific Canada manufactured, sold and/or distributed linerboard, corrugated sheets and corrugated containers in Canada directly, or indirectly through an agent, subsidiary or affiliate.

13.    The business of each of Georgia-Pacific and Georgia-Pacific Canada are inextricably interwoven with that of the other and each is, and/or was, during the timeframe of the conspiracy, the agent of the other for the purposes of the manufacture, sale and distribution of linerboard and/or corrugated sheets and containers, and for the purposes of the conspiracy described hereinafter.

- 5 -

14.    Defendant Weyerhaeuser Paper Co. ("Weyerhaeuser") is a Washington corporation with its principal place of business in Federal Way, Washington. At all relevant times, Weyerhaeuser manufactured, sold, and/or distributed linerboard, corrugated sheets and corrugated containers in North America directly, or indirectly through an agent, subsidiary or affiliate.

15.    Weyerhaeuser Company is a Washington corporation with its principal place of business in Federal Way, Washington. At all relevant times, Weyerhaeuser Company manufactured, sold, and/or distributed linerboard, corrugated sheets and corrugated containers in North America directly, or indirectly through an agent, subisdiary or affiliate.

16.    Weyerhaeuser Company Limited, formerly known as Weyerhaeuser Canada Ltd., ("Weyerhaeuser Canada") is a Canadian federal corporation, with a principal place of business in Toronto, Ontario. It is a wholly owned subsidiary of Weyerhaeuser Company. At all relevant times, Weyerhaeuser Canada manufactured, sold, and/or distributed linerboard, corrugated sheets and corrugated containers in Canada directly, or indirectly through an agent, subsidiary or affiliate.

17.    The business of each of Weyerhaeuser, Weyerhaeuser Company and Weyerhaeuser Canada are inextricably interwoven with that of the other and each is, and/or was, during the time frame of the conspiracy, the agent of the other for the purposes of the manufacture, sale and distribution of linerboard and/or corrugated sheets and containers, and for the purposes of the conspiracy described hereinafter.

18.    Defendant Temple-Inland Inc. ("Temple") is a Delaware corporation with its principal place of business in Austin, Texas. At all relevant times, Temple manufactured, sold and/or distributed linerboard, corrugated sheets and corrugated containers in North

- 6 -

America directly or indirectly through an agent, subsidiary or affiliate, including *inter alia,* defendant Inland Paperboard and Packaging, Inc. Temple acquired Defendant Gaylord Container Corp. in 2002. Temple is the successor in interest to Gaylord and is liable for its acts as alleged herein.

19.    Defendant Inland Paperboard and Packaging, Inc. ("Inland Paperboard") is a U.S. corporation with its principal place of business in Indianapolis, Indiana. It is a subsidiary and/or agent of Defendant Temple.    At all relevant times, Inland Paperboard manufactured, sold and/or distributed linerboard, corrugated sheets and corrugated containers in North America directly, or indirectly through an agent, subsidiary or affiliate.

20.    The business of each of Temple and Inland Paperboard are inextricably interwoven with that of the other and each is, and/or was, the agent of the other for the purposes of the manufacture, sale and distribution of linerboard and/or corrugated sheets and containers, and for the purposes of the conspiracy described hereinafter

21.    Defendant Gaylord Container Corp. ("Gaylord") is a Delaware corporation with its principal place of business in Deerfield, Illinois. At all relevant times, Gaylord manufactured, sold and/or distributed linerboard, corrugated sheets and corrugated containers in North America directly, or indirectly through an agent, subsidiary or affiliate. In 2002, Gaylord Container Corp. was acquired by Temple.

22.    Defendant Tenneco, Inc. ("Tenneco") is a Delaware corporation with its principal place of business in Greenwich, Connecticut. At all relevant times, Tenneco manufactured, sold and/or distributed corrugated sheets and containers in North America through its affiliate, Defendant Tenneco Packaging. In early 1999, Tenneco spun off its corrugated

- 7 -

packaging operations into a separate, free standing company, Defendant Packaging Corporation of America.

23.    Tenneco Packaging formerly known as Packaging Corporation of America, is a Delaware corporation with its principal place of business in Lake Forest, Illinois. At all relevant times, Tenneco Packaging manufactured, sold and/or distributed corrugated sheets and containers in North America. directly, or indirectly through an agent, subsidiary or affiliate.

24.    Defendant Packaging Corporation of America is a Delaware corporation with its principal place of business in Lake Forest, Illinois. Packaging Corporation of America was created in 1999 when Tenneco spun off its corrugated packaging operations.    Packaging Corporation of America is the successor in interest to Tenneco and Tenneco Packaging and is liable for their acts as alleged herein.

25.    The business of each of Tenneco, Tenneco Packaging and Packaging Corporation of America are inextricably interwoven with that of the other and each is, and/or was, the agent of the other for the purposes of the manufacture, sale and distribution of linerboard and/or corrugated sheets and containers, and for the purposes of the conspiracy described hereinafter.

26.    The acts alleged in this complaint to have been done by each Defendant were authorized, ordered and done by its officers, directors, agents, employees or representatives while engaged in the management, direction, control or transaction of its business affairs.

- 8 -

27.    Various persons and/or firms, not named as Defendants herein, may have participated as co-conspirators in the violation alleged herein and may have performed acts and made statements in furtherance thereof.

**Background**

28.    Linerboard is a compressed material used for the inner and outer layers of a corrugated box or sheet. Medium is the fluted inner layer of the corrugated sheet. Together, linerboard and medium are referred to as containerboard. Containerboard is used to make corrugated sheets and containers.  Linerboard accounts for more than fifty percent of the production cost of corrugated sheets and containers.

29.    The Plaintiff alleges that from at least 1993, and continuing until at least the end of 1995, the Defendants were involved in an unlawful conspiracy to raise, stabilize and maintain the prices of linerboard throughout North America. Linerboard is the principal component of corrugated sheets and containers and therefore the conspiracy artificially increased the price of corrugated sheets and containers.

**The Conspiracy**

30.    In mid-1993, Stone Container organized a concerted effort with the other Defendants to decrease inventory levels and increase prices for linerboard in North America.

31.    Specifically, Stone Container devised a plan to invite the Defendants to implement a coordinated price increase for linerboard. As part of the unlawful plan devised by Stone Container, the Defendants conspired to, and did, take downtime to reduce production and inventory supplies of linerboard. Contemporaneously with the co-ordinated downtime, Stone Container agreed to purchase a significant volume of linerboard from its competitors. The effect was to reduce industry supply to a 20 year low at a time when

- 9 -

demand in the industry was increasing. The actions undertaken by Stoner Container and the other Defendants were extraordinary and not in the regular course of business.

32. Following the unprecedented industry downtime, the Defendants unlawfully conspired to increase the price charged for linerboard in North America. Beginning in August 1993, through a series of six consecutive price increases, the price of linerboard rose from approximately $270-290 per ton in the third quarter of 1993 to $530 per ton in April, 1995.

33. In furtherance of the conspiracy the following acts were done by the Defendants and their servants and agents:

    (a)    they met secretly in person and/or by telephone to discuss inventory levels, prices and volumes of sales of linerboard and/or corrugated sheets and containers;

    (b)    they agreed to, and did, unlawfully reduce the industry inventory of linerboard;

    (c)    they agreed to, and did, fix and maintain prices and coordinate price increases for the sale of linerboard and/or corrugated sheets and containers;

    (d)    they agreed to, and did, allocate the volumes of sales, customers, and markets for linerboard and/or corrugated sheets and containers among themselves;

    (e)    they exchanged information regarding inventory, prices and volumes of sales of linerboard and/or corrugated cardboard sheets and containers for the purpose of monitoring and enforcing adherence to the agreed-upon prices, volumes of sales and markets;

    (f)    they instructed members of the conspiracy not to divulge the existence of the conspiracy; and

    (g)    they took active steps to conceal the unlawful conspiracy from their customers, the authorities, and the public.

- 10 -

34.  The Defendants were motivated to conspire and their predominant purpose and intention was:

(a)  to harm the Plaintiff and members of the public by requiring them to pay artificially high prices for linerboard and/or corrugated sheets and containers;

(b)  to harm the members of the public, including the Plaintiff, who purchased linerboard and/or corrugated sheets and containers by requiring them to pay artificially high prices for those products; and

(c)  to illegally increase their profits on the sale of linerboard and/or corrugated sheets and containers.

35.  The acts particularized in paragraphs 30 to 34 were unlawful acts directed towards the purchasers of linerboard and/or corrugated sheets and containers, including the Plaintiff, which unlawful acts the Defendants knew in the circumstances would likely cause injury to those purchasers and to the Plaintiff and the Defendants are liable for the tort of civil conspiracy.

36.  Alternatively, the acts particularized in paragraphs 30 to 34 were unlawful acts undertaken by the Defendants with the intent to injure purchasers of linerboard and/or corrugated sheets and containers, including the Plaintiff, and the Defendants are liable for the tort of intentional interference with economic interests.

37.  The acts particularized in paragraphs 30 to 34 were also in breach of Part VI of the *Competition Act* and render the Defendants liable to pay the damages pursuant to s. 36 of the *Competition Act*.

38.  In late February, 1998, the U.S. Federal Trade Commission charged the Defendant Stone Container for inviting its competitors to join a coordinated price increase contrary

- 11 -

to the provisions of the *Federal Trade Commission Act*. In May, 1998, a consent decree was entered in which Stone Container agreed to cease and desist from:

(a)     Requesting, suggesting, urging, or advocating that any manufacturer or seller of linerboard raise, fix, or stabilize prices or price levels, or engage in any other pricing action with regard to sales of linerboard to third parties.

(b)     Entering into, attempting to enter into, adhering to, or maintaining any combination, conspiracy, agreement, understanding, plan or program with any manufacturer or seller of linerboard to fix, raise, establish, maintain or stabilize prices or price levels, or engage in any other pricing action with regard to sales of linerboard to third parties.

## Damages

39.     The Plaintiff suffered damages as follows:

(a)     The price of linerboard and/or corrugated sheets and containers purchased by the Plaintiff has been fixed, raised, maintained and stabilized at artificial and non-competitive levels; and

(b)     Competition in the sale of linerboard and/or corrugated sheets and containers has been restrained.

40.     During the timeframe of the conspiracy, the Plaintiff purchased corrugated containers manufactured by the Defendants. By reason of the alleged violations of the *Competition Act* and the common law, the Plaintiff paid more for those corrugated containers than they would have paid in the absence of the illegal combination and conspiracy. As a result, the Plaintiff has been injured in its business and property and have suffered damages in an amount presently undetermined.

41.     The Plaintiff's damages have been suffered in the Province of Ontario.

42.     The Plaintiff states that it is representative of persons who purchased linerboard, corrugated sheets and/or corrugated containers during the relevant time period.

- 12 -

## Applicable Legislation

43.     The Plaintiff pleads and rely on the *Competition Act*, R.S. 1985, c. 19 (2nd Supp), s.36.

44.     The Plaintiff pleads and relies on section 17 (g), (h), (o) of the *Rules of Civil Procedure*, allowing for service *ex juris* of the foreign Defendants. Specifically, the Statement of Claim may be served without court order outside Ontario because the claim is:

   (a)     in respect of a tort committed in Ontario (rule 17.02(g));

   (b)     in respect of damages sustained in Ontario arising from a tort or breach of contract wherever committed (rule 17.02(h)); and

   (c)     against a person outside Ontario who is a necessary and proper party to this proceeding properly brought against another person served in Ontario (rule 17.02(o)).

45.     The Plaintiff pleads and rely on the *Class Proceedings Act, 1992*.

46.     The Plaintiff proposes that this action be tried at London, Ontario.


Date: March 19, 2004                          Siskinds, Cromarty, Ivey and Dowler LLP
                                              Barristers & Solictors
                                              680 Waterloo Street
                                              London, ON  N6A 3V8

                                              Charles M. Wright  LSUC # 36599Q
                                              Andrea L. DeKay  LSUC #43818M
                                              Tel: (519) 672-2121
                                              Fax: (519) 672-6065

                                              Solicitors for the Plaintiff

Court File No:43669

La Cie McCormick Canada Co. v. Stone Container Corp. et al.

*ONTARIO*
SUPERIOR COURT OF JUSTICE

Proceeding commenced at London

STATEMENT OF CLAIM

**Siskind, Cromarty, Ivey & Dowler** [LLP]
680 Waterloo Street
London, ON  N6A 3V8

Charles M. Wright (LSUC # 36599Q)
Andrea L. DeKay (LSUC #43818M)
Tel: (519) 672-2121
Fax: (519) 672-6065

Solicitors for the Plaintiff

# EXHIBIT B

# Regulation 194 -- RULES OF CIVIL PROCEDURE

## RULE 30 DISCOVERY OF DOCUMENTS -- ss. 30.01 to 30.1.01

### INTERPRETATION -- s. 30.01

**30.01** (1) In rules 30.02 to 30.11,

(a) "document" includes a sound recording, videotape, film, photograph, chart, graph, map, plan, survey, book of account and data and information recorded or stored by means of any device; and

(b) a document shall be deemed to be in a party's power if that party is entitled to obtain the original document or a copy of it and the party seeking it is not so entitled.

O. Reg. 560/84, r. 30.01(1); O. Reg. 427/01, s. 12.

(2) In subrule 30.02(4),

(a) a corporation is a subsidiary of another corporation where it is controlled directly or indirectly by the other corporation; and

(b) a corporation is affiliated with another corporation where,

(i) one corporation is the subsidiary of the other,

(ii) both corporations are subsidiaries of the same corporation, or

(iii) both corporations are controlled directly or indirectly by the same person or persons.

O. Reg. 560/84, r. 30.01(2).

### SCOPE OF DOCUMENTARY DISCOVERY -- s. 30.02

#### Disclosure

**30.02** (1) Every document relating to any matter in issue in an action that is or has been in the possession, control or power of a party to the action shall be disclosed as provided in rules 30.03 to 30.10, whether or not privilege is claimed in respect of the document.

#### Production for Inspection

(2) Every document relating to any matter in issue in an action that is in the possession, control or power of a party to the action shall be produced for inspection if requested, as provided in rules 30.03 to 30.10, unless privilege is claimed in respect of the document.

### Insurance Policy

(3) A party shall disclose and, if requested, produce for inspection any insurance policy under which an insurer may be liable,

(a) to satisfy all or part of a judgment in the action; or

(b) to indemnify or reimburse a party for money paid in satisfaction of all or part of the judgment,

but no information concerning the insurance policy is admissible in evidence unless it is relevant to an issue in the action.

### Subsidiary and Affiliated Corporations and Corporations Controlled by Party

(4) The court may order a party to disclose all relevant documents in the possession, control or power of the party's subsidiary or affiliated corporation or of a corporation controlled directly or indirectly by the party and to produce for inspection all such documents that are not privileged.

O. Reg. 560/84, r. 30.02.

### AFFIDAVIT OF DOCUMENTS -- s. 30.03

### Party to Serve Affidavit

**30.03** (1) A party to an action shall, within ten days after the close of pleadings, serve on every other party an affidavit of documents (Form 30A or 30B) disclosing to the full extent of the party's knowledge, information and belief all documents relating to any matter in issue in the action that are or have been in the party's possession, control or power.

### Contents

(2) The affidavit shall list and describe, in separate schedules, all documents relating to any matter in issue in the action,

(a) that are in the party's possession, control or power and that the party does not object to producing;

(b) that are or were in the party's possession, control or power and for which the

party claims privilege, and the grounds for the claim; and

(c) that were formerly in the party's possession, control or power, but are no longer in the party's possession, control or power, whether or not privilege is claimed for them, together with a statement of when and how the party lost possession or control of or power over them and their present location.

(3) The affidavit shall also contain a statement that the party has never had in the party's possession, control or power any document relating to any matter in issue in the action other than those listed in the affidavit. O. Reg. 560/84, r. 30.03(1-3).

Lawyer's Certificate

(4) Where the party is represented by a lawyer, the lawyer shall certify on the affidavit that he or she has explained to the deponent,

(a) the necessity of making full disclosure of all documents relating to any matter in issue in the action; and

(b) what kinds of documents are likely to be relevant to the allegations made in the pleadings.

O. Reg. 560/84, r. 30.03(4); O. Reg. 653/00, s. 3.

Affidavit not to be Filed

(5) An affidavit of documents shall not be filed unless it is relevant to an issue on a pending motion or at trial. O. Reg. 221/86, s. 1, para. 10.

INSPECTION OF DOCUMENTS -- s. 30.04

Request to Inspect

**30.04** (1) A party who serves on another party a request to inspect documents (Form 30C) is entitled to inspect any document that is not privileged and that is referred to in the other party's affidavit of documents as being in that party's possession, control or power.

(2) A request to inspect documents may also be used to obtain the inspection of any document in another party's possession, control or power that is referred to in the originating process, pleadings or an affidavit served by the other party.

(3) A party on whom a request to inspect documents is served shall forthwith inform the party making the request of a date within five days after the service of the request to inspect documents and of a time between 9:30 a.m. and 4:30 p.m. when the documents may be inspected at the office of the solicitor of the party served, or at some other convenient place, and shall at the time and place named make the documents available for inspection.

### Documents to be Taken to Examination and Trial

(4) Unless the parties agree otherwise, all documents listed in a party's affidavit of documents that are not privileged and all documents previously produced for inspection by the party shall, without notice, summons or order, be taken to and produced at,

(a) the examination for discovery of the party or of a person on behalf or in place of or in addition to the party; and

(b) the trial of the action.

### Court may Order Production

(5) The court may at any time order production for inspection of documents that are not privileged and that are in the possession, control or power of a party.

### Court may Inspect to Determine Claim of Privilege

(6) Where privilege is claimed for a document, the court may inspect the document to determine the validity of the claim.

### Copying of Documents

(7) Where a document is produced for inspection, the party inspecting the document is entitled to make a copy of it at the party's own expense, if it can be reproduced, unless the person having possession or control of or power over the document agrees to make a copy, in which case the person shall be reimbursed for the cost of making the copy.

### Divided Disclosure or Production

(8) Where a document may become relevant only after the determination of an issue in the action and disclosure or production for inspection of the document before the issue is determined would seriously prejudice a party, the court on the party's motion may grant leave to withhold disclosure or production until after the issue has been determined.

O. Reg. 560/84, r. 30.04.

### DISCLOSURE OR PRODUCTION NOT ADMISSION OF RELEVANCE -- s. 30.05

**30.05** The disclosure or production of a document for inspection shall not be taken as an admission of its relevance or admissibility. O. Reg. 560/84, r. 30.05.

WHERE AFFIDAVIT INCOMPLETE OR PRIVILEGE IMPROPERLY CLAIMED -- s. 30.06

**30.06** Where the court is satisfied by any evidence that a relevant document in a party's possession, control or power may have been omitted from the party's affidavit of documents, or that a claim of privilege may have been improperly made, the court may,

(a) order cross-examination on the affidavit of documents;

(b) order service of a further and better affidavit of documents;

(c) order the disclosure or production for inspection of the document, or a part of the document, if it is not privileged; and

(d) inspect the document for the purpose of determining its relevance or the validity of a claim of privilege.

O. Reg. 560/84, r. 30.06.

DOCUMENTS OR ERRORS SUBSEQUENTLY DISCOVERED -- s. 30.07

**30.07** Where a party, after serving an affidavit of documents,

(a) comes into possession or control of or obtains power over a document that relates to a matter in issue in the action and that is not privileged; or

(b) discovers that the affidavit is inaccurate or incomplete,

the party shall forthwith serve a supplementary affidavit specifying the extent to which the affidavit of documents requires modification and disclosing any additional documents. O. Reg. 560/84, r. 30.07.

EFFECT OF FAILURE TO DISCLOSE OR PRODUCE FOR INSPECTION -- s. 30.08

Failure to Disclose or Produce Document

**30.08** (1) Where a party fails to disclose a document in an affidavit of documents or a supplementary affidavit, or fails to produce a document for inspection in compliance with these rules, an order of the court or an undertaking,

(a) if the document is favourable to the party's case, the party may not use the document at the trial, except with leave of the trial judge; or

(b) if the document is not favourable to the party's case, the court may make such order as is just.

O. Reg. 560/84, r. 30.08(1); O. Reg. 504/00, s. 3.

### Failure to Serve Affidavit or Produce Document

(2) Where a party fails to serve an affidavit of documents or produce a document for inspection in compliance with these rules or fails to comply with an order of the court under rules 30.02 to 30.11, the court may,

    (a) revoke or suspend the party's right, if any, to initiate or continue an examination for discovery;

    (b) dismiss the action, if the party is a plaintiff, or strike out the statement of defence, if the party is a defendant; and

    (c) make such other order as is just.

O. Reg. 560/84, r. 30.08(2).

### PRIVILEGED DOCUMENT NOT TO BE USED WITHOUT LEAVE -- s. 30.09

**30.09** Where a party has claimed privilege in respect of a document and does not abandon the claim by giving notice in writing and providing a copy of the document or producing it for inspection at least 90 days before the commencement of the trial, the party may not use the document at the trial, except to impeach the testimony of a witness or with leave of the trial judge. O. Reg. 560/84, r. 30.09; O. Reg. 19/03, s. 7.

### PRODUCTION FROM NON-PARTIES WITH LEAVE -- s. 30.10

### Order for Inspection

**30.10** (1) The court may, on motion by a party, order production for inspection of a document that is in the possession, control or power of a person not a party and is not privileged where the court is satisfied that,

    (a) the document is relevant to a material issue in the action; and

    (b) it would be unfair to require the moving party to proceed to trial without having discovery of the document.

### Notice of Motion

(2) A motion for an order under subrule (1) shall be made on notice,

    (a) to every other party; and

    (b) to the person not a party, served personally or by an alternative to personal service under rule 16.03.

### Court may Inspect Document

(3) Where privilege is claimed for a document referred to in subrule (1), or where the court is uncertain of the relevance of or necessity for discovery of the document, the court may inspect the document to determine the issue.

### Preparation of Certified Copy

(4) The court may give directions respecting the preparation of a certified copy of a document referred to in subrule (1) and the certified copy may be used for all purposes in place of the original.

O. Reg. 560/84, r. 30.10.

### DOCUMENT DEPOSITED FOR SAFE KEEPING -- s. 30.11

**30.11** The court may order that a relevant document be deposited for safe keeping with the registrar and thereafter the document shall not be inspected by any person except with leave of the court. O. Reg. 560/84, r. 30.11.

# EXHIBIT C

# Regulation 194 --- RULES OF CIVIL PROCEDURE

## RULE 31 EXAMINATION FOR DISCOVERY --- ss. 31.01 to 31.11

### DEFINITION -- s. 31:01

**31.01** In rules 31.02 to 31.11, "document" has the same meaning as in clause 30.01(1)(a). O. Reg. 560/84, r. 31.01.

### FORM OF EXAMINATION -- s. 31.02

**31.02** (1) Subject to subrule (2), an examination for discovery may take the form of an oral examination or, at the option of the examining party, an examination by written questions and answers, but the examining party is not entitled to subject a person to both forms of examination except with leave of the court.

(2) Where more than one party is entitled to examine a person, the examination for discovery shall take the form of an oral examination, unless all the parties entitled to examine the person agree otherwise.

O. Reg. 560/84, r. 31.02.

### WHO MAY EXAMINE AND BE EXAMINED -- s. 31.03

#### Generally

**31.03** (1) A party to an action may examine for discovery any other party adverse in interest, once, and may examine that party more than once only with leave of the court, but a party may examine more than one person as permitted by subrules (3) to (8).

#### On Behalf of Corporation

(2) Where a corporation may be examined for discovery, the examining party may examine any officer, director or employee on behalf of the corporation, but the court on motion of the corporation before the examination may order the examining party to examine another officer, director or employee.

(3) Where an officer, director or employee of a corporation has been examined, no other officer, director or employee of the corporation may be examined without leave of the court.

### On Behalf of Partnership or Sole Proprietorship

(4) Where an action is brought by or against a partnership or a sole proprietorship using the firm name, each person who was, or is alleged to have been, a partner or the sole proprietor, as the case may be, at a material time, may be examined on behalf of the partnership or sole proprietorship.

### In Place of Person under Disability

(5) Where an action is brought by or against a party under disability,

(a) the litigation guardian may be examined in place of the person under disability; or

(b) at the option of the examining party, the person under disability may be examined if he or she is competent to give evidence,

but where the litigation guardian is the Children's Lawyer or the Public Guardian and Trustee, the litigation guardian may be examined only with leave of the court.

### Assignee

(6) Where an action is brought by or against an assignee, the assignor may be examined in addition to the assignee.

### Trustee in Bankruptcy

(7) Where an action is brought by or against a trustee of the estate of a bankrupt, the bankrupt may be examined in addition to the trustee.

### Nominal Party

(8) Where an action is brought or defended for the immediate benefit of a person who is not a party, the person may be examined in addition to the party bringing or defending the action.

### Limiting Multiple Examinations

(9) Where a party is entitled to examine for discovery,

(a) more than one person under this rule; or

(b) multiple parties who are in the same interest,

but the court is satisfied that multiple examinations would be oppressive, vexatious or unnecessary, the court may impose such limits on the right of discovery as are

just. O. Reg. 560/84, r. 31.03; O. Reg. 69/95, ss. 18, 19 and 20, parts.

## WHEN EXAMINATION MAY BE INITIATED -- s. 31.04

### Examination of Plaintiff

**31.04** (1) A party who seeks to examine a plaintiff for discovery may serve a notice of examination under rule 34.04 or written questions under rule 35.01 only after delivering a statement of defence and, unless the parties agree otherwise, serving an affidavit of documents.

### Examination of Defendant

(2) A party who seeks to examine a defendant for discovery may serve a notice of examination under rule 34.04 or written questions under rule 35.01 only after,

(a) the defendant has delivered a statement of defence and, unless the parties agree otherwise, the examining party has served an affidavit of documents; or

(b) the defendant has been noted in default.

### Completion of Examination

(3) The party who first serves on another party a notice of examination under rule 34.04 or written questions under rule 35.01 may examine first and may complete the examination before being examined by another party, unless the court orders otherwise.

O. Reg. 560/84, r. 31.04.

## ORAL EXAMINATION BY MORE THAN ONE PARTY -- s. 31.05

**31.05** Unless the court orders or the parties agree otherwise, where more than one party is entitled to examine a party or person for discovery without leave, there shall be only one oral examination, which may be initiated by any party adverse to the party,

(a) who is to be examined; or

(b) on behalf or in place of whom, or in addition to whom, a person is to be examined.

O. Reg. 560/84, r. 31.05.

## SCOPE OF EXAMINATION -- s. 31.06

General

**31.06** (1) A person examined for discovery shall answer, to the best of his or her knowledge, information and belief, any proper question relating to any matter in issue in the action or to any matter made discoverable by subrules (2) to (4) and no question may be objected to on the ground that,

(a) the information sought is evidence;

(b) the question constitutes cross-examination, unless the question is directed solely to the credibility of the witness; or

(c) the question constitutes cross-examination on the affidavit of documents of the party being examined.

Identity of Persons Having Knowledge

(2) A party may on an examination for discovery obtain disclosure of the names and addresses of persons who might reasonably be expected to have knowledge of transactions or occurrences in issue in the action, unless the court orders otherwise.

Expert Opinions

(3) A party may on an examination for discovery obtain disclosure of the findings, opinions and conclusions of an expert engaged by or on behalf of the party being examined that relate to a matter in issue in the action and of the expert's name and address, but the party being examined need not disclose the information or the name and address of the expert where,

(a) the findings, opinions and conclusions of the expert relating to any matter in issue in the action were made or formed in preparation for contemplated or pending litigation and for no other purpose; and

(b) the party being examined undertakes not to call the expert as a witness at the trial.

O. Reg. 560/84, r. 31.06(1-3).

Insurance Policies

(4) A party may on an examination for discovery obtain disclosure of,

(a) the existence and contents of any insurance policy under which an insurer may be liable to satisfy all or part of a judgment in the action or to indemnify or reimburse a party for money paid in satisfaction of all or part of the judgment; and

(b) the amount of money available under the policy, and any conditions affecting its availability.

(5) No information concerning the insurance policy is admissible in evidence unless it is relevant to an issue in the action. O. Reg. 441/90, s. 7.

### Divided Discovery

(6) Where information may become relevant only after the determination of an issue in the action and the disclosure of the information before the issue is determined would seriously prejudice a party, the court on the party's motion may grant leave to withhold the information until after the issue has been determined. O. Reg. 560/84, r. 31.06(5).

### REFUSAL OR FAILURE TO ANSWER -- s. 31.07

### Effect of Refusal to Answer

**31.07** (1) Where a party, or a person examined for discovery on behalf of or in place of a party, has refused to answer a proper question or to answer a question on the ground of privilege, and has failed to furnish the information in writing not later than 60 days before the trial begins, the party may not introduce the information at trial except with leave of the trial judge.

### Effect of Failure to Answer in Accordance with undertaking

(2) Where a party, or a person examined for discovery on behalf of or in place of a party, has undertaken to answer a question but has failed to furnish the information in writing not later than 60 days before the trial begins, the party may not introduce the information at trial except with leave of the trial judge.

### Additional Sanction

(3) The sanction provided by subrules (1) and (2) is in addition to the sanctions provided by rule 34.15 (sanctions for default in examination).

O. Reg. 560/84, r. 31.07; O. Reg. 504/00, s. 4.

### EFFECT OF COUNSEL ANSWERING -- s. 31.08

**31.08** Questions on an oral examination for discovery shall be answered by the person being examined but, where there is no objection, the question may be answered by his or her counsel and the answer shall be deemed to be the answer of the person being examined unless, before the conclusion of the examination, the person repudiates, contradicts or qualifies the answer. O. Reg. 560/84, r. 31.08.

## INFORMATION SUBSEQUENTLY OBTAINED -- s. 31.09

### Duty to Correct Answers

**31.09** (1) Where a party has been examined for discovery or a person has been examined for discovery on behalf or in place of, or in addition to the party, and the party subsequently discovers that the answer to a question on the examination,

(a) was incorrect or incomplete when made; or

(b) is no longer correct and complete,

the party shall forthwith provide the information in writing to every other party.

### Consequences of Correcting Answers

(2) Where a party provides information in writing under subrule (1),

(a) the writing may be treated at a hearing as if it formed part of the original examination of the person examined; and

(b) any adverse party may require that the information be verified by affidavit of the party or be the subject of further examination for discovery.

### Sanction for Failing to Correct Answers

(3) Where a party has failed to comply with subrule (1) or a requirement under clause (2)(b), and the information subsequently discovered is,

(a) favourable to the party's case, the party may not introduce the information at the trial, except with leave of the trial judge; or

(b) not favourable to the party's case, the court may make such order as is just.

O. Reg. 560/84, r. 31.09.

## DISCOVERY OF NON-PARTIES WITH LEAVE -- s. 31.10

### General

**31.10** (1) The court may grant leave, on such terms respecting costs and other matters as are just, to examine for discovery any person who there is reason to believe has information relevant to a material issue in the action, other than an expert engaged by or on behalf of a party in preparation for contemplated or pending litigation.

Test for Granting Leave

(2) An order under subrule (1) shall not be made unless the court is satisfied that,

(a) the moving party has been unable to obtain the information from other persons whom the moving party is entitled to examine for discovery, or from the person the party seeks to examine;

(b) it would be unfair to require the moving party to proceed to trial without having the opportunity of examining the person; and

(c) the examination will not,

(i) unduly delay the commencement of the trial of the action,

(ii) entail unreasonable expense for other parties, or

(iii) result in unfairness to the person the moving party seeks to examine.

Costs Consequences for Examining Party

(3) A party who examines a person orally under this rule shall serve every party who attended or was represented on the examination with the transcript free of charge, unless the court orders otherwise.

(4) The examining party is not entitled to recover the costs of the examination from another party unless the court expressly orders otherwise.

Limitation on Use at Trial

(5) The evidence of a person examined under this rule may not be read into evidence at trial under subrule 31.11(1).

O. Reg. 560/84, r. 31.10.

USE OF EXAMINATION FOR DISCOVERY AT TRIAL -- s. 31.11

Reading in Examination of Party

**31.11** (1) At the trial of an action, a party may read into evidence as part of the party's own case against an adverse party any part of the evidence given on the examination for discovery of,

(a) the adverse party; or

(b) a person examined for discovery on behalf or in place of, or in addition to the adverse party, unless the trial judge orders otherwise,

if the evidence is otherwise admissible, whether the party or person has already given evidence or not.

## Impeachment

(2) The evidence given on an examination for discovery may be used for the purpose of impeaching the testimony of the deponent as a witness in the same manner as any previous inconsistent statement by that witness.

## Qualifying Answers

(3) Where only part of the evidence given on an examination for discovery is read into or used in evidence, at the request of an adverse party the trial judge may direct the introduction of any other part of the evidence that qualifies or explains the part first introduced.

## Rebuttal

(4) A party who reads into evidence as part of the party's own case evidence given on an examination for discovery of an adverse party, or a person examined for discovery on behalf or in place of or in addition to an adverse party, may rebut that evidence by introducing any other admissible evidence.

## Party under Disability

(5) The evidence given on the examination for discovery of a party under disability may be read into or used in evidence at the trial only with leave of the trial judge.

## Unavailability of Deponent

(6) Where a person examined for discovery,

  (a) has died;

  (b) is unable to testify because of infirmity or illness;

  (c) for any other sufficient reason cannot be compelled to attend at the trial; or

  (d) refuses to take an oath or make an affirmation or to answer any proper question,

any party may, with leave of the trial judge, read into evidence all or part of the evidence given on the examination for discovery as the evidence of the person examined, to the extent that it would be admissible if the person were testifying in court.

(7) In deciding whether to grant leave under subrule (6), the trial judge shall consider,

    (a) the extent to which the person was cross-examined on the examination for discovery;

    (b) the importance of the evidence in the proceeding;

    (c) the general principle that evidence should be presented orally in court; and

    (d) any other relevant factor.

Subsequent Action

(8) Where an action has been discontinued or dismissed and another action involving the same subject matter is subsequently brought between the same parties or their representatives or successors in interest, the evidence given on an examination for discovery taken in the former action may be read into or used in evidence at the trial of the subsequent action as if it had been taken in the subsequent action.

O. Reg. 560/84, r. 31.11.

# EXHIBIT D

COURT FILE NO.: 99-GD-46719
DATE: 20010126

## ONTARIO
### SUPERIOR COURT OF JUSTICE

B E T W E E N: )
)  *C. Scott Ritchie, Michael Eizenga*
VITAPHARM CANADA LTD., FLEMING ) and *Charles Wright* for the Plaintiffs
FEED MILL LTD., ROGER AWAD and )
MARY HELEN AWAD )
)
Plaintiffs )
)
- and - )
)
F. HOFFMAN-LAROCHE LTD., )  *David W. Kent* for BASF Canada
HOFFMAN-LAROCHE INC., ROCHE )  Inc.
VITAMINS INC., HOFFMAN-LAROCHE )
LIMITED, RHONE-POULENC S.A., )  *William Vanveen* for Hoffman-
RHONE-POULENC CANADA INC., BASF)  LaRoche Ltd.
AKTIENGESELLSCHAFT, BASF )
CORPORATION, BASF CANADA INC., )  *Sandra Forbes* for Rhone-Poulenc
LONZA A.G., LONZA INC., ALUSUISSE-)  Canada Inc.
LONZA CANADA INC., CHINOOK )
GROUP LTD., CHINOOK GROUP INC., )  *Donald Houston* and *Jennifer*
DCV INC. and DUCOA L.P. )  *Roberts-Logan* for Alusuisse-
)  Lonza Canada Inc.
Defendants )

## PROCEEDING UNDER THE *CLASS PROCEEDINGS ACT, 1992*

### COURT FILE NO.: 771/99

B E T W E E N: )
)  *C. Scott Ritchie, Michael Eizenga*
GLEN FORD )  and *Charles Wright* for the Plaintiffs
)
Plaintiff )
)

- and -                                           )
                                                  )
F. HOFFMANN-LaROCHE LTD., RHONE-)        *Derek J. Bell* for Takeda Chemical
POULENCE S.A., LONZA INC., BASF AG,)     Industries Ltd.
EISAI CO.LTD., TAKEDA CHEMICAL      )
INDUSTRIES LTD., MERCK KgaA,         )    *James Doris* for Bioproducts Inc.
CHINOOK GROUP LTD., DCV INC.,       )
DUCOA L.P., AKZO NOBEL NV,          )
DAIICHI PHARMACEUTICAL              )
COMPANY LTD., BIOPRODUCTS INC., )
DEGUSSA-HULS AG, DEGUSSA            )
CORPORATION, REILLY CHEMICALS  )
S.A., VITACHEM COMPANY,             )
HOFFMANN-LA ROCHE LTD., RHONE- )
POULENC CANADA INC., AND BASF  )
CANADA INC.                         )
                                    )
                                    )
                   Defendants       )

## PROCEEDING UNDER THE *CLASS PROCEEDINGS ACT, 1992*

### COURT FILE NO.:00-CV-222080CP

B E T W E E N:                          )        *C. Scott Ritchie, Michael Eizenga*
                                        )        and *Charles Wright* for the Plaintiffs
GLEN FORD, VITAPHARM CANADA     )
LTD., FLEMING FEED MILL LTD., and )
MARCY DAVID                      )
                                 )
                   Plaintiffs    )
                                 )
- and -                          )
                                 )
F. HOFFMANN-LA ROCHE LTD.,       )        *William Vanveen* for Hoffman-
HOFFMANN-LA ROCHE LTD., MERCK )           LaRoche Ltd.
KgaA, LONZA A.G., ALUSUISSE-LONZA)
CANADA INC., SUMITOMO CHEMICAL)           *Donald Houston* and *Jennifer*
CO. LTD., SUMITOMO CANADA         )        *Roberts-Logan* for Alusuisse-
LIMITED/LIMITEE and TANABE        )        Lonza Canada Inc.
SEIYAKU CO., LTD.                 )
                                  )
                   Defendants     )

PROCEEDING UNDER THE *CLASS PROCEEDINGS ACT, 1992*

COURT FILE NO.: 00-CV-200045CP

| | | |
|---|---|---|
| **B E T W E E N:** | ) | *C. Scott Ritchie, Michael Eizenga* |
| | ) | and *Charles Wright* for the Plaintiffs |
| GLEN FORD, VITAPHARM CANADA | ) | |
| LTD., FLEMING FEED MILL LTD., | ) | |
| ALIMENTS BRETON INC., ROGER | ) | |
| AWAD and MARY HELEN AWAD | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| - and - | ) | |
| | ) | |
| F. HOFFMANN-LA ROCHE LTD., | ) | *William Vanveen* for Hoffman- |
| HOFFMANN-LA ROCHE LIMITED/ | ) | LaRoche Ltd. |
| LIMITEE, RHONE-POULENC S.A., | ) | |
| RHONE-POULENC CANADA INC., | ) | *Sandra Forbes* for Rhone-Poulenc |
| RHONE-POULENC ANIMAL | ) | Canada Inc. |
| NUTRITION INC., RHONE-POULENC | ) | |
| INC., BASF AKTIENGESELLSCHAFT, | ) | *David W. Kent* for BASF Canada |
| BASF CORPORATION, BASF CANADA | ) | Inc. |
| INC., EISAI CO. LTD., TAKEDA | ) | |
| CHEMICAL INDUSTRIES LTD., | ) | |
| TAKEDA CANADA VITAMIN AND | ) | |
| FOOD INC., MERCK KgaA, DAIICHI | ) | |
| PHARMACEUTICAL COMPANY, LTD., | ) | |
| REINHARD STEINMETZ, DIETER | ) | |
| SUTER, HUGO STROTMANN, | ) | |
| ANDREAS HAURI, KUNO SOMMER | ) | |
| AND ROLAND BRONNIMANN | ) | |
| | ) | |
| Defendants | ) | |

PROCEEDING UNDER THE *CLASS PROCEEDINGS ACT, 1992*

COURT FILE NO.: 00-CV-20173CP

B E T W E E N:                                  )         *C. Scott Ritchie, Michael Eizenga*
                                               )         and *Charles Wright* for the Plaintiffs
GLEN FORD, FLEMING FEED MILL                   )
LTD., ALIMENTS BRETON INC., and                )
KRISTI CAPPA                                   )
                                               )
                         Plaintiffs            )
                                               )
- and -                                        )
                                               )
RHONE-POULENC S.A., RHONE-                     )         *Sandra Forbes* for Rhone-Poulenc
POULENC CANADA INC., DEGUSSA-                  )         Canada Inc.
HULS AG, DEGUSSA CORPORATION,                  )
NOVUS INTERNATIONAL INC., and                  )
AVENTIS ANIMAL NUTRITION S.A.                  )
                                               )
                         Defendants            )

## PROCEEDING UNDER THE *CLASS PROCEEDINGS ACT, 1992*

COURT FILE NO.: 00-CV-200044CP

B E T W E E N:                                  )         *C. Scott Ritchie, Michael Eizenga*
                                               )         and *Charles Wright* for the Plaintiffs
VITAPHARM CANADA LTD., FLEMING                 )
FEED MILL LTD., ALIMENTS BRETON                )
INC., and KRISTI CAPPA                         )
                                               )
                         Plaintiffs            )
                                               )
- and -                                        )
                                               )
DEGUSSA-HULS AG, DEGUSSA                        )         *Donald Houston* and *Jennifer*
CORPORATION, REILLY INDUSTRIES                 )         *Roberts-Logan* for Alusuisse-
INC., REILLY CHEMICALS S.A.,                   )         Lonza Canada Inc.
VITACHEM COMPANY, ALUSUISSE-                   )
LONZA CANADA INC., LONZA A.G.,                 )

NEPERA INCORPORATED, ROGER    )
NOACK and DAVID PURPI          )
                               )
                 Defendants    )

PROCEEDING UNDER THE *CLASS PROCEEDINGS ACT, 1992*

COURT FILE NO.: 00-CV-198647CP

B E T W E E N:                    )        *C. Scott Ritchie, Michael Eizenga*
                                 )        and *Charles Wright* for the Plaintiffs
FLEMING FEED MILL LTD., ALIMENTS )
BRETON INC., GLEN FORD and MARCY )
DAVID                            )
                                 )
                 Plaintiffs      )
                                 )
- and -                          )
                                 )
BASF AKTIENGESELLSCHAFT, BASF    )        *David W. Kent* for BASF Canada
CORPORATION, BASF CANADA INC.,   )        Inc.
CHINOOK GROUP LTD., CHINOOK      )
GROUP INC., DCV INC., DUCOA L.P.,)        *James Doris* for Bioproducts Inc.
AKZO NOBEL NV, BIOPRODUCTS INC.,)
RUSSELL COSBURN, JOHN KENNEDY, )
ROBERT SAMUELSON, LINDELL        )
HILLING, JOHN L. ("PETE") FISCHER )
and ANTONIO FELIX                )
                                 )
                 Defendants      )        **HEARD: January 12, 2001**

PROCEEDING UNDER THE *CLASS PROCEEDINGS ACT, 1992*

REASONS FOR DECISION

**The Motion**

[1]    This motion raises a matter of first impression. The moving party defendants seek

an order preventing plaintiffs from gaining access to documentary and deposition evidence from discovery in United States' litigation dealing with claims analogous to those seen in this Canadian action.

[2]     There are seven Ontario class actions which allege price fixing of vitamins and vitamin products. Parallel actions are taking place in British Columbia and Quebec.

[3]     The defendants BASF Canada Inc. ("BASF Canada"), Takeda Chemical Industries Ltd. ("Takeda Chemical"), Takeda Canada Vitamin & Food Inc. ("Takeda Canada"), F. Hoffmann-LaRoche Ltd. and Alusuisse-Lonza Canada Inc.(collectively, the "moving defendants") move for an order declaring that the plaintiffs in these class proceedings are acting contrary to the purposes and provisions of the *Class Proceedings Act, 1992* S.O. 1992, c. 6 ("*CPA*") and the *Rules of Civil Procedure* R.R.O. 1990, Reg. 194 ("rules").

[4]     The plaintiffs in action #771/99 *Glen Ford v. F. Hoffman-LaRoche Ltd. et al* (the "*Ford*" action) and #99-GD-46719 *VitaPharm Canada Ltd. et al v. F. Hoffman Ltd. et al.* (the "*VitaPharm*" action) have moved to intervene in United States' litigation (*In re: Vitamins Anti-Trust Litigation*, MDL No. 1285) to obtain discovery evidence being given by defendants in that litigation (the "U.S.Motion"). The moving defendants ask for an order requiring the plaintiffs to discontinue their motion before the American court.

[5]     Some background is necessary.

**Background**

[6]     The plaintiffs in the class actions at issue sue various combinations of defendants. The plaintiffs in the Canadian class proceedings assert that the defendants entered into conspiracies to fix prices with respect to the distribution and sale of vitamins and related products manufactured by some of the corporate defendants.

[7]     The claims assert that the worldwide vitamin industry was dominated by certain groupings of defendants who controlled a significant percentage of the world vitamin market for many of the main types of vitamins. Some defendants have pled guilty in the United States and Canada to price fixing charges concerning vitamins. The Canadian class proceedings are based upon the impact of the alleged global conspiracies upon residents in Canada.

[8]     Generally, vitamins are manufactured and marketed for one or the other of three specific uses: for direct human consumption, as food and beverage additives for human consumption and as an agricultural feed supplement for animal consumption.

[9]     The Ontario and British Columbia class proceedings allege that different combinations of the defendants fixed the prices of various vitamins having one or more of the mentioned three uses. There is a broad spectrum of plaintiffs because of the different users. The proposed representative plaintiffs in each action bring the action on

their own behalf and on behalf of similarly situated persons who purchased, used or received a particular vitamin and/or purchased products containing a certain vitamin or products derived from animals that consumed a particular vitamin.

### The Canadian Class Proceedings

[10]    A number of class proceedings have been commenced in Canada. The seven Ontario actions are to be dealt with in the Toronto Region. See *VitaPharm Canada Ltd. v. F.Hoffman La-Roche Ltd.* (2000), 48 O.R. (3d) 21 (S.C.J.). Plaintiffs' counsel (the "Strosberg/Siskind counsel group") has been named lead counsel for the Ontario class actions, as a result of a "carriage motion". See *VitaPharm Canada Ltd. v. F. Hoffman-Laroche Ltd.* [2000] O.J. No. 4594 (S.C.J.). Four other Ontario class actions have been stayed as a result of the carriage motion. The current Ontario class actions seek certification for national classes, covering all Canadians other than those plaintiffs in the British Columbia and Quebec class actions.

[11]    There is a class action commenced in British Columbia-C994010 *Ritchie-Smith v. F. Hoffman et al.* ("*Ritchie-Smith*"). Counsel for the British Columbia plaintiffs has entered into cooperative arrangements with the Strosberg/Siskind counsel group. The intent is for the litigation to proceed primarily in Ontario. The plaintiffs in *Ritchie-Smith* have joined with the plaintiffs in the *Ford* and *VitaPharm* actions in bringing the U.S. Motion. Counsel for the British Columbia plaintiffs in *Ritchie-Smith* has not agreed that this Ontario court's disposition of the motion at hand will in any way govern the B.C. plaintiffs in respect of the U.S. Motion. This court does not, of course, have jurisdiction over the *Ritchie-Smith* case.

[12]    There are also two class proceedings commenced in Quebec which relate to the alleged conspiracies-#500-06-000090-999 *Quebec Option Consommateurs et al. v. Roche Holding et al.* and #500-06-000090-999 *Quebec Auger et al. v. Hoffman LaRoche et al.* It is noted parenthetically that in Quebec a class action may only include individuals as class members and not corporations. The Ontario actions include corporate plaintiffs, and embrace Quebec corporations as putative class members.

[13]    For ease of convenience and simplicity, I shall refer to the Ontario and British Columbia class actions as the "Canadian class proceedings". The Canadian class proceedings continue to be re-engineered because of the complexities. Thus, the seven current Ontario class actions include five new, so-called reconstituted class actions - #00-CV-200045CP (relating to an alleged conspiracy in respect of "Bulk Vitamins"), #00-CV-222090CP (relating to an alleged conspiracy in respect of "Biotin"), #00-CV-201723CP (relating to an alleged conspiracy in respect of "Methionine"), #00-CV-200044CP (relating to an alleged conspiracy in respect of "Niacin") and #00-CV-19867CP (relating to an alleged conspiracy in respect of "Choline Choride".) The pleadings for some of these five actions have not yet been served on all defendants. Jurisdiction motions are pending by defendants. No class proceeding has yet been certified.

## The United States' Litigation

[14]     A myriad of plaintiffs have commenced actions in the United States in respect of alleged price fixing in the distribution and sale of vitamins and related products manufactured by some of the corporate defendants in the Canadian actions. All federal court civil litigation in the United States, class and non-class, has been consolidated before Judge Thomas F. Hogan in the United States District Court for the District of Columbia under the style *In re: Vitamins Anti-Trust Litigation*, MDL No. 1285 ("U.S. Litigation").

[15]     The U.S. Litigation includes some 48 defendants, 29 of whom who are not parties to the Ontario or British Columbia vitamins cases. Conversely, many of the defendants in the Canadian class proceedings are not defendants in the U.S. Litigation. Of the five parties who are moving defendants, only Takeda Chemical is a named defendant in the U.S. Litigation.

[16]     Documentary and oral discovery of both parties and non-parties is already underway in the U.S. Litigation. Collectively, the defendants in the U.S. Litigation have produced over two million documents with perhaps another two million documents being anticipated. Another 250,000 documents are anticipated from non-parties. Hundreds of depositions, including non-party depositions, are probable.

[17]     The U.S. Litigation discovery process is governed in part by a Protective Order entered on November 3, 1999 (the "Protective Order"). The Protective Order limits access to and dissemination of all documents and information disclosed during the discovery process.

[18]     The U.S. Litigation is using an Internet based system called Verilaw to serve interlocutory papers and to schedule depositions. More than 600 papers (plus related confidential materials and documents) relating to the U.S. Litigation have been posted on the Verilaw site.

## The Plaintiffs' U.S. Motion

[19]     On October 26, 2000 the plaintiffs in the *Ford, VitaPharm* and *Ritchie-Smith* actions brought the U.S. motion in the U.S. Litigation seeking modification of the Protective Order and access to the evidence from the discovery of certain of the U. S. corporate defendants who allegedly participated in the manufacture and sale of Niacin and Niacinamide ("corporate Niacin defendants"). Six of the eight corporate Niacin defendants in the U.S. Litigation reportedly are named as defendants in the Ontario actions. None of these six corporate Niacin defendants have pleaded guilty to conspiracy charges in Canada. Three of the six have pleaded guilty in the U.S. to charges of conspiracy to fix prices in the U.S. and elsewhere.

[20]   The plaintiffs seek an order by Judge Hogan to modify the Protective Order, whereby plaintiffs' counsel would be granted access to all documents, interrogatory responses, admissions and other discovery papers produced by the corporate Niacin defendants. Counsel would also be granted permission to attend depositions of the corporate Niacin defendants and plaintiffs' counsel would be added to the Verilaw system for both service and deposition scheduling. To enable the access, the plaintiffs seek to be deemed "Parties" and to have their counsel deemed to be "Counsel" in the U.S. Litigation.

[21]   The defendants say that the effect of the requested order of Judge Hogan would be to give the plaintiffs unfettered access to discovery evidence and the documents of all defendants to the U.S. Litigation, not just the corporate Niacin defendants. However, the plaintiffs advise they are prepared to limit their access to discovery of the corporate Niacin defendants.

[22]   The plaintiffs' purpose through the U.S. Motion is to obtain evidence in support of their claims in the Canadian class proceedings. They rely upon "comity" in proposing the intervention in the U.S. Litigation for discovery sharing. The plaintiffs' U.S. Motion is grounded upon their status as litigants in the Canadian class proceedings.

[23]   The moving defendants submit that the plaintiffs' U.S. Motion is inconsistent with the *CPA*. In addition, the defendants characterize the motion at hand as a "practice motion" which relates to the control by the court over the manner in which litigants conduct litigation. It is in the nature of injunctive relief. The moving defendants seek an order from this court requiring the plaintiffs to discontinue and withdraw the U.S. motion.

**The Issues**

[24]   There are three issues:

  1)  Does this Court have jurisdiction to grant the relief sought by the moving defendants' motion?

  2)  Does this Court have any role in respect of the U.S. Motion? and

  3)  Should this Court require the plaintiffs to discontinue and withdraw the U.S. Motion?

**First Issue: Does this Court have jurisdiction to grant the relief sought by the moving defendants' motion?**

[25]   This court has jurisdiction to deal with the moving defendants' motion under s. 101 of the *Courts of Justice Act*, R.S.O. 1990, c. C. 43 and s. 12 of the *CPA*. More generally,

the Superior Court of Justice has plenary jurisdiction to control its own process. See *Amchem Products v. British Columbia (Workers Compensation Board)*, [1993] 1 S.C.R. 897 where the Supreme Court of Canada recognized the power to issue an anti-suit injunction. If this Court has the power to issue an anti-suit injunction the court necessarily has the power to take the lesser steps sought in the defendants' motion.

[26]     The House of Lords considered a similar issue in *South Carolina Insurance Co. v. Assurantie Maatschappij "De Zeven Provincien" NV*, [1987] 1 A.C. 24 (H.L.). The defendants in a court action in the High Court of England sought pre-trial discovery of business associates of the plaintiffs by an application under 28 U.S.C. § 1782 before the United States district court. The plaintiffs sought an injunction from the English court. Lord Brandon pointed out that a party to an action in England can not compel pre-trial discovery as against a non-party to the action. (p.492). However, Lord Brandon then stated (p. 497):

> I cannot see that the defendants, by seeking to exercise a right potentially available to them under the Federal Law of the United States, have in any way departed from, or interfered with, the procedure of the English court. All they have done is what any party preparing his case in the High Court here is entitled to do, namely to try to obtain in a foreign country, by means lawful in that country, documentary evidence which they believe that they need in order to prepare and present their case.

[27]     As a result of the inexorable forces of globalization and expanding international free trade and open markets, there will be an ever-increasing inter-jurisdictional presence of corporate enterprises. This is seen particularly in respect of American and Canadian business activity, given the extent of cross-border trade. If both societies are to maximize the benefits of expanding freer trade and open markets, the legal systems of both countries must recognize and facilitate an expeditious, fair and efficient regime for the resolution of litigation that arises from disputes in either one or both countries.

[28]     For the reasons given, in my view this court has jurisdiction to grant the relief sought by the moving defendants' motion.

## Second Issue: Does this Court have any role in respect of the U.S. Motion?

[29]     The U. S. Motion ultimately will be determined under United States' law. Nevertheless, United States' courts have made it clear that they welcome foreign courts' comments on the propriety of crossborder motions by foreign litigants seeking U.S. discovery. See *In re Bayer A.G.*, 146 F.3d 188 (3d Cir. 1988) and *Euromepa S.A. v. R. Esmerian Inc.*, 51 F.3d 1095 (2d Cir. 1995).

[30]     The moving defendants say that the plaintiffs have not applied for early or non-party discovery in the Canadian class proceedings before this court. The moving

defendants request this court to exercise control over its process by preventing the plaintiffs from gaining access to U.S. discovery. The moving defendants rely upon s. 12 of the *CPA* which provides that this court "may make any order it considers appropriate respecting the conduct of a class proceeding to ensure its fair and expeditious determination..."

[31]    The plaintiffs are not seeking discovery in the U.S. through their U.S. Motion. Rather, they are only seeking *access* to the discovery of the litigants in the U.S. Litigation. From a legal standpoint, the U.S. Motion is only necessary because of the Protective Order.

[32]    If there was no Protective Order and the plaintiffs were simply given access to discovery documents and depositions generated in the U.S. Litigation, the defendants could not take objection. It is only Judge Hogan who has jurisdiction to vary the terms of the Protective Order. Accordingly, the plaintiffs can only gain access by being successful in respect of their U.S. Motion.

[33]    There appears to be no precedent for the intervention by a Canadian litigant in foreign proceedings for the purposes of having access to the discovery evidence generated by the litigants in the foreign action. However, pursuant to 28 U.S.C. § 1782, United States statutory federal civil procedure facilitates foreign litigants by providing assistance when they wish to conduct discovery in the U. S. in aid of foreign litigation. This cooperative approach is based upon "...considerations of comity and sovereignity [sic] that pervade international law." *John Deere Ltd. v. Sperry Corp.* 754 F. 2d 132 (3d Cir. 1985) ("*John Deere*") at 135. Reciprocity by the foreign court is not a precondition for this assistance. *John Deere, supra* at 135.

[34]    Section 1782 provides two routes to the Canadian litigant seeking discovery through testimony or documents in the United States in aid of Canadian litigation. First, the Canadian litigant may obtain a letters rogatory or request from the Canadian court and then move in the appropriate federal district court for an order compelling discovery. (Rules 34.07(2) and 36.03 provide for such letters of request in Ontario.)

[35]    Alternatively, the Canadian litigant may simply apply directly to the appropriate U.S. federal district court for an order compelling discovery. The litigant need not go through the Canadian court as a prerequisite to making the request of the U.S. court. *John Deere, supra.*

[36]    Section 1782 represents unilateral U.S. legislation not dependent on reciprocity with the other country. Nevertheless, U.S. courts have taken the position they should not "countenance the use of U.S. discovery procedures to evade the limitations placed on domestic pre-trial disclosure by foreign tribunals." *John Deere, supra* at 136. United States' courts will have regard to the foreign country's laws that address evidence gathering. Permission to take U.S. discovery "that trenched upon the clearly established procedures of a foreign tribunal would not be within section 1782." *John Deere, supra* at 135.

[37]    English judges have noted the U.S. courts' invitation to foreign courts to provide guidance. English courts have observed that the domestic court will always be in the best position to both describe and act upon its own discovery practice and the question of whether the proposed U.S. discovery is appropriate in the context of the English proceedings. *Bankers Trust International plc v. P.T. Dharmal Sakti Sejahtera*, [1996] C.L.C. 252 (Q.B.) at 262, 263 ("*Bankers Trust*").

[38]    None of the Canadian class proceedings have been certified. The plaintiffs are simply putative representative plaintiffs to this point in time. The plaintiffs are not normally entitled to discovery until the close of pleadings (rules 30.03 (1) 31.03, 30.04, 31.04), they may not examine more than one officer of a corporate defendant without leave (rule 31.03 (2), (3)) and discovery of a non-party is dependent upon leave of the court (rules 30.10, 31.10). See for example *Stern v. Imasco* (1999), 38 C.P.C. (4th) 347 (Ont. S.C.J.). Ontario has enacted a rule that is narrower in scope than the American approach. See generally *Ontario (Attorney General) v. Stavro* (1995), 26 O.R. (3d) 39 (C.A.) at 47-48. The moving defendants submit that to allow the plaintiffs to continue with the U.S. Motion would be inconsistent with the Ontario rules of civil procedure.

[39]    The Ontario limitations with respect to pre-trial discovery of a non-party without leave is intended to protect non-parties. Its purpose is not to protect parties to the action.

[40]    A U.S. federal district court hearing an application for an order under s. 1782 considers whether permitting discovery would offend the foreign tribunal. There is a particular concern that the discovery provisions of the foreign jurisdiction are "not circumvented by procedures authorized in American courts" when the request for discovery assistance does not arise from letters rogatory but rather comes directly from the foreign litigant. *John Deere, supra* at 136.

[41]    The district court hearing an application for discovery assistance under s. 1782 will normally allow for the discovery of relevant evidence unless the opposing party can raise a justifiable objection.

[42]    In making this determination the district court in its discretion may consider statutes or case law from the foreign jurisdiction. *In Re Bayer AG, supra* at 8; *Euromepa S.A. v. R.. Esmerian, Inc. supra*, at 1099, 1100.

[43]    The English courts have restrained a party to English proceedings from pursuing an application in the United States under s.1782. In *Bankers Trust, supra*, Mance J. held that this can be done where the application is unconscionable, such as when the conduct is vexatious or oppressive or interferes with the due process of the English court (at 254, 262, 263).

[44]    In that case the defendant sought discovery in the United States after completion of the trial in England but before judgment. In determining whether or not the applicant's intended application in the United States was unconscionable, Mance J. took  into

account not only the "potential injustice to the one party if the other is allowed to pursue" the proceeding in the U.S. but also "the potential injustice to the latter if he is not so allowed...." (at 254)

[45]    A Canadian court generally will be reluctant to prevent someone from gathering evidence extraterritorially, as its ultimate admissibility in a Canadian proceeding will be determined by the Canadian courts. *Penty v. Law Society of British Columbia* (1999), 68 B.C.L.R. (3d) 159 (S.C.) at 162; (1999), 69 B.C.L.R. (3d) 97 (B.C.C.A.) at 107-108; application for leave to appeal dismissed with costs, [1999] S.C.C.A. No. 616.

(3) **Should this Court require the plaintiffs to discontinue and withdraw the U.S. Motion?**

[46]    The moving defendants submit that the plaintiffs should not have access to discovery in the United States until the jurisdiction of this court in respect of the Canadian proceedings is decided through the hearing of the pending motions by the defendants in this court. I disagree. If this court is ultimately found to lack jurisdiction, then the Ontario actions will fall away and the defendants will be free of them. In such event, the plaintiffs' access to discovery in the United States will be of no import.

[47]    The moving defendants also profess to have a concern about a loss of confidentiality if access is given to the U.S. discovery. They express a concern about an invasion of privacy. (It is noted incidentally that Takeda Chemical is the only moving defendant who is a party to both the U.S. and Canadian proceedings. No other moving defendant has produced documents in the U.S.) The maintenance of confidentiality is, of course a matter for Judge Hogan in his consideration of the U.S. Motion. The plaintiffs have stated that if Judge Hogan grants the plaintiffs access to U.S. discovery they will consent to an order of this court if the defendants see that to be of assistance in maintaining confidentiality and the sanctity of the Protective Order.

[48]    The plaintiffs' U.S. Motion *prima facie* has the purpose of saving considerable time and money in the Canadian proceedings. If successful in gaining access to U.S. discovery in the U.S. Litigation, the plaintiffs can determine earlier and with greater certainty the nature and extent of the precise evidence available that is relevant to the Canadian proceedings. To deny access to the present U. S. discovery could conceivably mean that the plaintiffs over time would have to pursue separately s. 1782 orders in respect of the corporate Niacin defendants in the U.S. Litigation. At the least, success in obtaining access to the present U.S. discovery means that the plaintiffs can much more easily determine and discard what is *not relevant* for the purpose of the Canadian proceedings.

[49]    The plaintiffs' action in seeking access to the U.S. discovery is not oppressive or unfair to the defendants in the Canadian proceedings. To the contrary. Such access is consistent with the three policy objectives underlying the *CPA* – facilitating access to justice, judicial efficiency and behaviour modification. In particular, there will be

significant savings in litigation costs through such access.

[50]    The plaintiffs' request for access to discovery evidence which they believe necessary to prepare their case in Canada, a request made through means lawful in the United States, does not violate the rules and procedure of this court. There is no consequential unfairness to the defendants in the Canadian class proceedings.

[51]    Therefore, in my view, this court should not require the plaintiffs to discontinue and withdraw the U.S. Motion.


## Disposition

[52]    For the reasons given the motion of the moving defendants is dismissed. I may be spoken to as to costs.


CUMMING J.


Released:  January 26, 2001

COURT FILE NOS.: 82/2001
90/2001
91/2001
115/2001

DATE: 2002/04/10

SUPERIOR COURT OF JUSTICE – ONTARIO
(DIVISIONAL COURT)

RE:         Court File No. 99-GD-46719

VITAPHARM CANADA LTD., *et al* (Plaintiffs/Respondents) and
F. HOFFMANN-LAROCHE LTD., *et al* (Defendants/Appellants)
Proceeding under the *Class Proceedings Act, 1992*

Court File No. 771/99

GLEN FORD (Plaintiff/Respondent) and F. HOFFMANN-LA
ROCHE LTD., *et al.* (Defendants/Appellants) Proceeding under
the *Class Proceedings Act, 1992*

Court File No. 00-CV-222080CP

GLEN FORD, *et al.* (Plaintiffs/Respondents) and F.
HOFFMANN-LAROCHE LTD., *et al.* (Defendants/Appellants)
Proceeding under the *Class Proceedings Act, 1992*

Court File No. 00-CV-200045CP

GLEN FORD, *et al.* (Plaintiffs/Respondents) and F.
HOFFMANN-LAROCHE LTD., *et al.* (Defendants/Appellants)
Proceeding under the *Class Proceedings Act, 1992*

Court File No. 00-CV-20173CP

GLEN FORD, *et al.* (Plaintiffs/Respondents) and RHONE-
POULENC S.A., *et al.* (Defendants/Appellants) Proceeding
under the *Class Proceedings Act, 1992*


Court File No. 00-CV-200044CP

VITAPHARM CANADA LTD., *et al.* (Plaintiffs/Respondents) and
DEGUSSA-HULS AG, *et al.* (Defendants/Appellants)
Proceeding under the *Class Proceedings Act, 1992*


Court File No. 00-CV-198647CP

FLEMING FEED MILL LTD., *et al.* (Plaintiffs/Respondents) and
BASF AKTIENGESELLSCHAFT, *et al.* (Defendant/Appellants)
Proceeding under the *Class Proceedings act, 1992*


BEFORE:    FARLEY, MATLOW, ROY JJ:

COUNSEL:   *C. Scott Ritchie and Michael A. Eizenga* for the Plaintiffs
           (Respondents*)*

           *John F. Rook, Q.C. and Derek J. Bell* for Takeda Canada
           Vitamin & Food Inc. and Takeda Chemical Industries Ltd.,
           Appellants

           *François Baril* for Hoffman-LaRoche Limited, Appellant

           *Donald Houston and Jennifer Roberts-Logan* for the
           Alusuisse-Lonza Canada Inc., Appellant

           *David Kent* for BASF Canada Inc., Appellant


HEARD:     January 7 and 8, 2002

### ENDORSEMENT

[1]    Each of the four appeals is dismissed with costs fixed at $1500 payable
       forthwith.

[2]     The appellant in each of the appeals argued together before us with leave seeks an order setting aside the order of Cumming, J made on January 26, 2001.

[3]     By that order motions made by the appellants for orders enjoining the respondents from proceeding with certain motions before Judge Thomas F. Hogan in the United States District Court for the District of Columbia were dismissed. Those motions were brought in the context of related consolidated litigation brought against the appellants and others in the U.S. The relief sought included the conferring of status on the respondents to bring the motions before Judge Hogan and exemptions for them from a protective order which protects the confidentiality of documents and information disclosed during the discovery process in the U.S. litigation.
       . An order conferring the status sought by the respondents has now be granted and the balance of the motions stands adjourned pending the outcome of these proceedings.

[4]     The attack against the order in appeal is based principally on the characterization by the appellants of the order sought by the respondents before Judge Hogan as an order allowing discovery in the U.S. in the actions pending in this Court. In contrast, the respondents take the position that the motions brought by them were not brought for the purpose of obtaining any rights of discovery whatsoever. Rather, it is their position that the purpose of the order sought by them was to secure access to the fruits of discovery conducted by the parties in the U.S. litigation that might be of probative value in the actions pending in this Court. They do not seek the right to examine any person or compel production of any document in the U.S.

[5]     Cumming, J accepted the respondents' characterization of their motions before Judge Hogan and held that the respondents were seeking "access to discovery evidence" rather than discovery itself.

[6]     It was fairly conceded by counsel acting for the respective appellants that, if we should agree with this finding, it must follow that the appeals must be dismissed because the arguments advanced on their behalf were based on their characterization of the relief sought by the respondents which was rejected by Cumming, J.

[7]     With the greatest of respect, I prefer to rest my ultimate disposition of this appeal on this narrow issue. I agree with this finding made by Cumming, J and am compelled to impose the fatal consequence contemplated by the appellants' concession.

[8]     It would be beyond belief that a foreign court would purport to assume jurisdiction over an action pending in Ontario and even contemplate

granting interlocutory relief for discovery. It is trite to assert that only this Court has jurisdiction to control its own process.

[9]     All that could reasonably be sought from the U.S. court presided over by Judge Hogan by the respondents, and perhaps granted, would be assistance to further their investigations and provide evidence that might be of assistance to advance their claims in the pending litigation here. If relevant evidence could be obtained by them by that means, that evidence would still be subject to the control of this Court with respect to its admissibility.

[10]    It follows, therefore, that the U.S. motions should be governed by the applicable U.S. law in a U.S. court. Whether to entertain the motions or grant any relief are matters entirely for that court to determine.

[11]    I appreciate and adopt the following laudable principle of judicial co-operation set out by Cumming, J in paragraph 27 of his Reasons For Decision:

> "If both societies are to maximize the benefits of expanding free trade and open markets, the legal systems of both countries must recognize and facilitate an expeditious, fair and efficient regime for the resolution of litigation that arises from disputes in either one or both countries".

[12]    However, judicial co-operation cannot extend to surrendering or adopting jurisdiction without a proper basis. It would be unseemly for a court in one country to purport to assume jurisdiction over proceedings pending in a court of the other country and I do not construe the observation of Cumming, J to support such an approach.

[13]    It follows, therefore, that even if the respondents had sought the intervention of the U.S. court in the litigation pending here, it would not be necessary to grant injunctive relief prior to the hearing of the motions. It would be preferable, in my view, to await the decision of the U.S. court.

[14]    The jurisdiction of this Court to enjoin litigants from seeking relief from a foreign court for relief that is available only in that foreign jurisdiction is, with respect, doubtful and should await determination in another case if the issue should squarely arise.

[15]    Finally, in my respectful view, for the reasons set out above it would be an inappropriate intrusion for this Court to address the merits of the respondents' U.S. motions or to provide guidance to Judge Hogan as sought by him in his Reasons For Decision for granting intervenor status to the respondents. The merits of such a motion should be considered only by the court to which it is made.

_____
MATLOW J.

_____
ROY J.

DATE: April 10, 2002

COURT FILE NOS.: 82/2001
90/2001
91/2001
115/2001
DATE: 20020410

## ONTARIO
## SUPERIOR COURT OF JUSTICE

### DIVISIONAL COURT

### FARLEY, MATLOW, ROY JJ.

Court File No.: 99-GD-46719

| | |
|---|---|
| **B E T W E E N:** ) | |
| ) | |
| VITAPHARM CANADA LTD., *et al.* ) | *C. Scott Ritchie and Michael Eizenga* |
| ) | for the Plaintiffs, Respondents |
| Plaintiffs (Respondents) ) | |
| ) | |
| - and - ) | |
| ) | |
| F. HOFFMANN-LA ROCHE LTD., *et al.* ) | *John F. Rook, Q.C. and Derek J. Bell* |
| ) | for Takeda Canada Vitamin & Food |
| Defendants (Appellants) ) | Inc. and Takeda Chemical Industries, |
| ) | Ltd., Appellants |
| Proceeding under the *Class Proceedings Act, 1992* ) | |
| ) | |

Court File No.: 771/99

| | |
|---|---|
| **B E T W E E N:** ) | |
| ) | |
| GLEN FORD ) | |
| ) | |
| Plaintiff (Respondent) ) | |
| ) | |
| - and - ) | |
| ) | |
| F. HOFFMANN-LA ROCHE LTD., *et al.* ) | *François Baril* |
| ) | for Hoffmann-La Roche Limited, |
| Defendants (Appellants) ) | Appellant |
| ) | |
| Proceeding under the *Class Proceedings Act, 1992* ) | |
| ) | |

Court File No.: 00-CV-222080CP

B E T W E E N:

GLEN FORD, *et al.*

                Plaintiffs (Respondents)

- and -

F. HOFFMANN-LA ROCHE LTD., *et al.*

                Defendants (Appellants)

Proceeding under the *Class Proceedings Act, 1992*

Court File No.: 00-CV-200045CP

B E T W E E N:

GLEN FORD, *et al.*

                Plaintiffs (Respondents)

- and -

F. HOFFMANN-LA ROCHE LTD., *et al.*

                Defendants (Appellants)

Proceeding under the *Class Proceedings Act, 1992*

Court File No.: 00-CV-20173CP

B E T W E E N:

GLEN FORD, *et al.*

                Plaintiffs (Respondents)

- and -

RHONE-POULENC S.A., *et al.*

                Defendants (Appellants)

Proceeding under the *Class Proceedings Act, 1992*

Court File No.: 00-CV-200044CP

**B E T W E E N:**                           )
                                             )
VITAPHARM CANADA LTD., *et al.*              )
                                             )
                  Plaintiffs (Respondents)   )
                                             )
- and -                                      )
                                             )
DEGUSSA-HULS AG, *et al.*                    )   *Donald Houston and*
                                             )   *Jennifer Roberts-Logan*
                  Defendants (Appellants)    )   for the Alusuisse-Lonza Canada Inc.,
                                             )   Appellant
Proceeding under the *Class Proceedings Act, 1992*  )
                                             )
                                                 Court File No.: 00-CV-198647CP

**B E T W E E N:**                           )
                                             )
FLEMING FEED MILL LTD., *et al.*             )
                                             )
                  Plaintiffs (Respondents)   )
                                             )
- and -                                      )
                                             )
BASF AKTIENGESELLSCHAFT, *et al.*            )   *David Kent*
                                             )   for BASF Canada Inc., Appellant
                  Defendants (Appellants)    )
                                             )
Proceeding under the *Class Proceedings Act, 1992*  )
                                             )
                                             )
                                             )   HEARD:  January 7, 2002

## FARLEY J.:

[1]     The defendants BASF Canada Inc., Hoffmann-La Roche Limited, Alusuisse-Lonza Canada Inc. and Takeda Canada Vitamin & Food Inc. / Takeda Chemical Industries, Ltd. appeal the order of Cumming J. dated January 26, 2001 dismissing the defendants' motion for an order preventing the plaintiffs from gaining access to documentary and deposition evidence from discovery in litigation in the United States dealing with claims analogous to those comprising the various Canadian class proceedings. There are seven Ontario class actions which allege price fixing of vitamins and vitamin products, with parallel actions in British Columbia and Quebec. The defendants had asserted to Cumming J. that the plaintiffs in these class proceedings, by

seeking access to such evidence, were acting contrary to the purposes and provisions of the *Class Proceedings Act, 1992*, S.O. 1992, c.6 ("CP Act") and the *Rules of Civil Procedure*, R.R.O. 1990, Reg. 194 ("Rules"). Access to the U.S. evidence was sought by the plaintiffs moving to intervene in the litigation in the U.S. (*In re: Vitamins Antitrust Litigation*, MDL No. 1285) so as to obtain discovery evidence being given in that litigation. The defendants requested that Cumming J. require the plaintiffs to discontinue their motion in the U.S. Court. I have had the benefit of reviewing Matlow J.'s draft reasons. While I come to the same conclusion as he has in dismissing the defendants' appeal, I felt that the issue involved merited a somewhat more extensive analysis.

[2]     In this appeal, the defendants asked that Cumming J.'s order be set aside and that this court grant an order as follows:

   .(a)    declaring that the plaintiffs are acting contrary to the purpose and provisions of the CP Act and the Rules by moving to intervene in the U.S. Litigation for the purpose of obtaining discovery from the U.S. defendants in that U.S. Litigation ("the U.S. Motion");

   (b)    requiring the plaintiffs to take all necessary steps to discontinue and withdraw the U.S. Motion and/or to refrain from taking any steps under any eventual U.S. order granting the relief sought by the plaintiffs in the U.S. Motion;

   (c)    for the costs of this appeal, of obtaining leave to appeal and of the original motion; and

   (d)    for such further and other relief as this Honourable Court may deem just.

[3]     In the U.S. Litigation, there is a U.S. Protective Order which limits access and use of documentary and disposition evidence produced in that litigation to the parties to that litigation as opposed to the general U.S. provision that such material would be openly accessible. This should be contrasted with the Canadian approach to litigation which restricts access to discovery evidence.

[4]     On March 19, 2001 U.S. District Judge Hogan presiding over the U.S. Litigation determined that the plaintiffs met the criteria for permissive intervention but deferred ruling on the portion of the U.S. Motion seeking modification of the U.S. Protective Order, access to Verilaw and attendance at depositions of the Niacin Defendants until the appeals process in the Canadian courts is exhausted or otherwise concluded or until such time as Judge Hogan determines that it is otherwise appropriate to decide those issues. At pp. 14-5 of his decision Judge Hogan stated:

... In the instant case, such a determination would require this Court to engage in an exegesis of Canadian procedure and discovery principles. Although Justice Cumming has stated that granting access to Plaintiffs does not offend Canadian procedure, this is only one Ontario court's interpretation of existing Canadian law.[20]  And the decision does not purport to be binding on the litigation pending

in other Canadian provinces.[21]  A decision by this Court to modify the Protective Order would surely require this Court to engage in its own evaluation of various Canadian provincial procedures.  Based on pragmatic considerations, this Court determines that such an inquiry, if undertaken at all, is best left until the conclusion of the Canadian appellate process.  This Court is reluctant to rule on issues that are a matter of first impression not only in the U.S., but in Canadian courts as well, particularly in light of the fact that the subsequent Canadian appellate decisions may effectively moot the Motion pending before this Court.[22] Even if the Canadian courts decline to overturn Justice Cumming's denial of the injunction sought by the Defendants, the appellate opinions are likely to provide valuable guidance to this Court in making its determination.

At footnote 21, Judge Hogan also raised an enquiry:

21.  As an additional consideration, the Canadian court asserts that it has "plenary jurisdiction to control its own process" and thus the authority to grant or deny the requested injunction, id. ¶ 25, at 9-10, but this Court queries whether such jurisdiction extends to supervising Movants' compliance with provisions of a U.S. protective order.  The Canadian Plaintiffs have agreed to submit to the jurisdiction of this Court for the purposes of enforcing the provisions of the Protective Order, but Defendants argue that there is no realistic way for this Court to enforce the Protective Order against the Canadian Plaintiffs. Defs' Opp. Mem. P&A at 19.  In his Reasons for Decision, Justice Cumming notes that the Canadian Plaintiffs "will consent to an order of this court if the defendants see that to be of assistance in maintaining confidentiality and the sanctity of the Protective Order." Reasons for Decision ¶ 47, at 13. Unfortunately, the Canadian court does not provide this Court with any insight as the nature of such a hypothetical order.  Nor does the Canadian court clearly delineate the jurisdiction of the Canadian court to enforce a U.S. protective order.

With respect to Judge Hogan's footnote concerns, I am of the view that reference should be had to the approach of Canadian courts to comity as exemplified in the following cases: *United States v. Ivey* (1995), 27 B.L.R. (2d) 221 (Ont. Gen. Div.), affirmed (1996), 27 B.L.R. (2d) 243 (Ont. C.A.), leave to S.C.C. refused [1997] 2 S.C.R. x; *Arrowmaster Inc. v. Unique Forming Ltd.* (1993), 17 O.R. (3d) 407 (Gen. Div.); *ATL Industries Ltd. v. Han Eol Ind. Co.* (1995), 36 C.P.C. (3d) 288 (Ont. Gen. Div.), all applying the principles enunciated in *Morguard Investments Ltd. v. De Savoye*, [1990] S.C.R. 1077.

[5]     Then J. in granting leave to appeal Cumming J.'s order summarized in his reasons of March 6, 2001 the points of contention at paras. 2-5:

2.     The reasons of Cumming J. for dismissing the Defendants' motion may be fairly summarized, *inter alia*, as follows:

a)     the Ontario Court had jurisdiction to grant the relief sought [paras. 25-28]; and

b)     the Ontario Court had a valid role in this matter even though the U.S. Motion itself is subject to U.S. law and requires a ruling by Judge Hogan [paras. 29, 37-43]; *but*

c)     the Plaintiffs were not seeking U.S. discovery but rather "access" to U.S. discovery [para. 31];

d)     Canadian courts are generally reluctant to prevent extraterritorial evidence gathering [para. 45];

e)     the pending attacks on the jurisdiction of the Ontario Court were irrelevant [para. 46];

f)     only one moving party before him was a party to the U.S. Litigation [para. 47];

g)     access to U.S. discovery would give the Plaintiffs an early evaluation of what evidence is relevant to the Canadian litigation and would generate significant savings in litigation costs [para. 49]; and

h)     the Plaintiffs' U.S. Motion is not unfair to the Defendants in the Canadian litigation and would generate significant savings in litigation costs [para. 49].

3.     The Defendants contend that the effect of the U.S. Motion will be to achieve a result in the U.S. Litigation for the purposes of the Canadian Litigation, to which the Plaintiffs are currently not entitled in the Canadian Litigation. As there has been no certification of the proceedings as a class action, the Defendants contend that the Plaintiffs have no current right of discovery in the Canadian Litigation as there is no right to discovery on the merits until the action has been certified as a class action. *Stern v. Imasco Ltd.* (1999), 38 C.P.C. (4th) 347 at 359 (Ont. S.C.J.).

4.     The Defendants contend that, apart from certification, there are proceedings pending attacking jurisdiction which if successful would terminate the Canadian proceedings against the successful Defendants and thus terminate the Plaintiffs' right to discovery against those Defendants. Finally, some of the U.S. Defendants are not parties to the Canadian proceedings and would not be subject to discovery in Ontario without leave of the Ontario Court.

5. The Defendants submit that in the circumstances, the Plaintiffs U.S. Motion represents an end run around Ontario's discovery policies codified in our Rules which provide *inter alia* in Rules 30, 31 and 36:

(a) there is no right to discovery of a defendant until after the close of pleadings and after the delivery of the plaintiff's affidavit of documents;

(b) discovery of a defendant is limited to information related to matters "in issue in an action";

(c) discovery of a corporate defendant is limited to single representative of the corporation;

(d) there is no right to discovery of a non-party without leave of the Court;

(e) if leave is granted, discovery of a non-party is limited to information "relevant to a material issue in the action"; and,

(f) evidence of persons outside the jurisdiction of the court may be obtained by letters rogatory, but only with leave of the court.

I am of the view that the foregoing (a) to (f) is an accurate summary of our approach in Ontario, subject to the adjustment to (f) as set forth below:

(f) compelled evidence of persons outside the jurisdiction of the court may be obtained by letters rogatory, but only with leave of the requesting court and the acceptance of same by the foreign court. (emphasis indicating adjustment)

I would also note that in the present Canadian cases, although correctly styled as "Proceeding under the *Class Proceedings Act, 1992*", these proceedings have not been certified as class actions. Rather they are proposed class actions with putative representative plaintiffs, which actions are only at the pre-discovery stage.

[6] Judge Hogan on the U.S. side and Cumming J. and Then J. on the Canadian side as well as the parties to this appeal all recognize that this is a question of first impression.

[7] The Canadian plaintiffs assert that significant deference should be given to Superior Court justices who have developed expertise in the area of class proceedings relying on *Anderson v. Wilson* (1999), 44 O.R. (3d) 673 (C.A.) at p. 677; *Campbell v. Flexwatt Corp.*, [1997] B.C.J. No. 2477 at para. 25; *Carom v. Bre-X Minerals Ltd.*, [2000] O.J. No. 4014 at para. 36. Cumming J. has earned an excellent reputation in the field of class proceedings. However it seems to me that the aspect of deference must be appropriately modified in this appeal for two reasons: (a) As observed above, Cumming J. recognized that he was stepping into unknown territory and (b) while certain elements of his decision were in the bailiwick of class proceedings, other elements were outside that purview.

[8] I would note that (as I understand it) but for the U.S. Protective Order, the Canadian plaintiffs here could have gone to the U.S. and subject to any residuary rules or polices, they would have been able to interview the U.S. plaintiffs and their counsel and review the discoverable information and documents then existing (or as may be forthcoming).

[9] To my view the question for this Canadian court is whether the Canadian plaintiffs (if permitted by Judge Hogan) will be accessing this discovery evidence in the passive sense of merely looking at that which has been produced in the ordinary course in the U.S. Litigation but not in the active sense of asking U.S. counsel to pursue avenues (which U.S. counsel would not have otherwise travelled) for the purpose of assisting the Canadian plaintiffs. If they were to proceed in the active sense, then in substance and effect, the Canadian plaintiffs would be engaging in discovery prior to the time that they are entitled to under our Rules and in a way which would be a breach of those Rules.

[10] The Canadian defendants have raised the spectre that Canadian counsel will use their cooperative liaison with their U.S. counterparts so as to have the latter act as their stalking horse to get discovery in the active sense. I would think that there are two safeguards against that inappropriate behaviour. Firstly, I would presume that Judge Hogan, if inclined to relax the U.S. Protective Order, would be concerned about irrelevant discovery being pursued in the U.S. Litigation and he would require terms which would ensure that the Canadian plaintiffs got nothing more than would otherwise be discovered in the U.S. (that is, as if the Canadian proceedings did not exist). Secondly, I would be of the opinion that if the Canadian plaintiffs did engage in active sense discovery, then this (Canadian) Court would determine (a) whether the fruits of that labour could be employed in the Canadian proceedings and (b) the other sanctions for infringement of our discovery rules. However if the Canadian plaintiffs are permitted by Judge Hogan to have access to what has otherwise been discovered in the U.S. Litigation and they conduct themselves in the passive sense, then I do not see that there is a conflict between our principles on (a) gathering evidence in a foreign jurisdiction (see *South Carolina v. Assurantie Maataschappij "De Zeven Provincien" NV*, [1986] 3 All E.R. 487 (H.L.)) and (b) the right to privacy (see *Ontario (Attorney General) v. Stavro* (1995), 26 O.R. (3d) 39 (C.A.); *Goodman v. Rossi* (1995), 125 D.L.R. (4th) 613 (Ont. C.A.)).

[11] In the South Carolina case, Lord Brandon (with whom the other law lords agreed) stated at p. 497:

... I cannot see that the defendants, by seeking to exercise a right potentially available to them under the Federal law of the United States, have in any way departed from, or interfered with, the procedure of the English court. All they have done is what any party preparing his case in the High Court here is entitled to do, namely to try to obtain in a foreign country, by means lawful in that country, documentary evidence which they believe that they need in order to prepare and present their case.

[12] In *Stavro*, our Court of Appeal stated at pp. 47-8:

In making the fairness assessment required by rule 30.10(1)(b), the motion judge must be guided by the policy underlying the discovery regime presently operating in Ontario. That regime provides for full discovery of and production from parties to the litigation. It also imposes ongoing disclosure obligations on those parties. Save in the circumstances specifically addressed by the rules, non-parties are immune from the potentially intrusive, costly and time-consuming process of discovery and production. By its terms, rule 30.10 assumes that requiring a party to go to trial without the forced production of relevant documents in the hands of non-parties is not *per se* unfair.

In *Goodman v. Rossi*, our Court of Appeal further observed at pp. 621-2:

... the [implied undertaking] principle is based on recognition of the general right of privacy which a person has with respect to his or her documents. The discovery process represents an intrusion on this right under the compulsory processes of the court. The necessary corollary is that this intrusion should not be allowed for any purpose other than that of securing justice in the proceeding in which the discovery takes place.

...

The rationale for the implied undertaking rule is compendiously stated Matthews and Malek's *Discovery* (1992), at p. 253:

The primary rationale for the imposition of the implied undertaking is the protection of privacy. Discovery is an invasion of the right of the individual to keep his own documents to himself. It is a matter of public interest to safeguard that right. The purpose of the undertaking is to protect, so far as is consistent with the proper conduct of the action, the confidentiality of a party's documents. It is in general wrong that one who is compelled by law to produce documents for the purpose of particular proceedings should be in peril of having those documents used by the other party for some purpose other than the purpose of the particular legal proceedings and, in particular, that they should be made available to third parties who might use them to the detriment of the party who has produced them on discovery. A further rationale is the promotion of full discovery, as without such an undertaking the fear of collateral use may in some cases operate as a disincentive to proper discovery. The interests of proper administration of justice require that there should be no disincentive to full and frank discovery.

[13]   If the Canadian plaintiffs have access to discovery in the passive sense, then they are merely evidence gathering as opposed to engaging in discovery of the Canadian defendants or non-parties. There is no compulsory disclosure thereby in the sense that someone is being coerced to provide material to the Canadian plaintiffs which is not already required solely for the U.S. Litigation. Further there will be no intrusion into the privacy of these persons since they will not be subjected to any further questioning or document production than they would have been already been required to do even if there were no Canadian proceedings. As well, but for

the U.S. Protective Order these persons do not have any protected privacy rights in the U.S. Litigation. It was raised by the Canadian defendants that if the Canadian plaintiffs were allowed to come in under a relaxed U.S. Protective Order, there will be an increased risk that the confidentiality which the U.S. Protective Order seeks to maintain will run an extra risk of (inadvertent) disclosure. That is not for this Court to consider, but rather for Judge Hogan. I have a similar view of their concern that the Canadian plaintiffs will see material which is not germane to the Canadian proceedings. Further the defence position that the Canadian plaintiffs are trying to end run our rule dealing with letters rogatory is untenable in an access to discovery passive sense situation; they are not able to use the coercive power of the court to compel answers and production in that sense but they are able to inspect what would otherwise be the U.S. public record.

[14]    Notwithstanding that the Canadian plaintiffs may have employed some loose language which could be interpreted as their having requested Judge Hogan to allow them to discover the U.S. defendants (as opposed to having access to that which has already been discovered), it appears clear to me that they in fact are asking him that the U.S. Protective Order be relaxed to allow them to review that which has otherwise been discovered in the ordinary course of the U.S. Litigation (as if the Canadian proceedings did not exist). On that basis, I would dismiss the appeal of the Canadian defendants and their request that the Canadian plaintiffs be enjoined from proceeding with their U.S. Motion.

[15]    If the Canadian plaintiffs were in fact asking that they be permitted to directly or indirectly engage in discovery in the active sense, then I would have come to an opposite conclusion. Simply put, that request would not be mere evidence gathering but the use of the coercive power to require discovery answer and production of documents which would infringe the privacy rights as discussed in *Stavro* and *Goodman v. Rossi*. That would be an end run around our Rules 30, 31 and 36 as discussed above. In the end result I am of the view that the appeal of the defendants should be dismissed on the basis that the Canadian plaintiffs are only seeking access to discovery material which would exist independently of (a) the Canadian proceedings and (b) the Canadian plaintiffs and their counsel.

[16]    Given the novelty of the question I am of the view that each party should bear its own costs.

Farley J.

Released: April 10, 2002

DATE: 20030313
DOCKET: C38626, C38625,
C38620 and C38615

## COURT OF APPEAL FOR ONTARIO

RE:         GLENN FORD, VITAPHARM CANADA LTD., FELMING FEED
            MILL LTD. and MARCY DAVID (Respondents (Plaintiffs)) – and –
            F. HOFFMANN-LA ROCHE LTD., ET AL (Appellants
            (Defendants))

BEFORE:     CATZMAN, CARTHY and MOLDAVER JJ.A.

COUNSEL:    David Kent for the appellants
            BASF Corp., and BASF Canada Inc.

            Don Houston and Jennifer Roberts-Logan
            for the appellants Lonza A.G.

            Derek J. Bell for the appellants
            Takedo Chemical Industries Ltd. and
            Takedo Canada Vitamin & Food Inc.

            F. Paul Morrison for the appellants
            Degussa-Hulls AG, Degussa Corp.,
            and Degussa Canada Inc.

            Brent Olthuis for the appellants
            Hoffman-Laroche Ltd.

            John Callaghan and Ben Na for
            Sumitomo Chemical Ltd.

            C. Scott Ritchie, Mike Eizenga and
            Andrea DeKay for the respondents

HEARD:      FEBRUARY 26, 2003

On appeal from the order of the Divisional Court (Farley, Matlow and Roy JJ.) dated
April 20, 2002 and the order of Cumming J. dated January 26, 2001.

# ENDORSEMENT

[1]    The appellants appeal from the order of the Divisional Court dismissing their appeal from the order of Cumming J., who refused to enjoin the respondents from pursuing their motion in the United States seeking access to testimony and documents obtained through the discovery process in that country. The facts surrounding the dispute between the parties are fully set out in the reasons of Cumming J. and need not be repeated.

[2]    These brief reasons are designed to address particular concerns raised by the appellants in their argument. They should be read in conjunction with the reasons of Cumming J., with which we substantially agree.

[3]    In our assessment, the facts and circumstances of this case do not give rise to comity concern, nor are there any overriding policy or fairness issues that would warrant the injunctive or declaratory relief sought by the appellants.

[4]    Properly characterized, the respondents are attempting to gather evidence in a foreign jurisdiction in accordance with the rules of that jurisdiction. The appellants challenge that characterization. They submit that the respondents are not "evidence-gathering" but are instead attempting to obtain, prior to certification, discovery of evidence given under compulsion of the United States discovery rules. The fallacy in this demarcation between the permissible and the impermissible is revealed by considering the circumstance if there was no protective order. Then the productions would be freely available and no complaint could be made if the respondents sought them out. Yet, they

would have been produced under compulsion. So, compulsion cannot be the hallmark of improper conduct.

[5]     With respect to the appellants' submission that Judge Hogan has requested information about the governing rules of practice and procedure in Ontario and that this court should provide him with such information, we are respectfully of the view that this can and should be done through expert evidence adduced by the parties before him. As for the other concerns raised by the appellants, including the timing of the respondents' motion, the nature and breadth of the information they seek, the fact that some of the documents might be subject to public interest privilege in Canada and the need to ensure that the respondents will abide by the terms of any amended protective order, these are best left to Judge Hogan. In our view, he is in the best position to make an order that is both fair and just and that takes into account the competing interests of the parties. In the end, we believe it is for Judge Hogan to determine when, if at all, to what extent and upon what terms and conditions, if any, the protective order should be varied as requested by the respondents.

[6]     To the extent that Judge Hogan is concerned about the type of order that a Canadian court could make to ensure compliance in Canada with his protective order, we see no impediment to his making any variation of his order conditional upon it being matched by an order of similar nature from the Superior Courts of the provinces in which the Canadian litigation is proceeding.

[7]     The appeal is dismissed with costs to the respondents. Counsel are invited to make

written submissions with respect to the quantum of such costs in the usual manner.



Supreme Court of Canada        Cour suprême du Canada



No. 29790

November 27, 2003

Coram: Bastarache, LeBel and Deschamps JJ.

**BETWEEN:**

Hoffmann-La Roche Ltd.

Applicant

- and -

Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd. and Marcy David

Respondents

**AND BETWEEN:**

Hoffmann-La Roche Limited/Limitée

Applicant

- and -

Le 27 novembre 2003

Coram : Les juges Bastarache, LeBel et Deschamps

**ENTRE :**

Hoffmann-La Roche Ltd.

Demanderesse

- et -

Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd. et Marcy David

Intimés

**ET ENTRE :**

Hoffmann-La Roche Limited/Limitée

Demanderesse

- et -

- 2 -

No.  29790

Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd., Aliments Breton Inc., Roger Awad and Mary Helen Awad

Respondents

AND BETWEEN:

Takeda Chemical Industries Ltd. and Takeda Canada Vitamin and Food Inc.

Applicants

- and -

Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd., Aliments Breton Inc., Roger Awad and Mary Helen Awad

Respondents

AND BETWEEN:

BASF Aktiengesellschaft, BASF Corporation and BASF Canada Inc.

Applicants

- and -

Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd., Aliments Breton Inc., Roger Awad and Mary Helen Awad

Respondents

AND BETWEEN:

BASF Aktiengesellschaft, BASF Corporation and BASF Canada Inc.

Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd., Aliments Breton Inc., Roger Awad et Mary Helen Awad

Intimés

ET ENTRE :

Takeda Chemical Industries Ltd. et Takeda Canada Vitamin and Food Inc.

Demanderesses

- et -

Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd., Aliments Breton Inc., Roger Awad et Mary Helen Awad

Intimés

ET ENTRE :

BASF Aktiengesellschaft, BASF Corporation et BASF Canada Inc.

Demanderesses

- et -

Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd., Aliments Breton Inc., Roger Awad et Mary Helen Awad

Intimés

ET ENTRE :

BASF Aktiengesellschaft, BASF Corporation et BASF Canada Inc.

- 3 -

No.  29790

| | |
|---|---|
| Applicants | Demandeurs |

- and -

- et -

Fleming Feed Mill Ltd., Aliments Breton Inc., Glen Ford and Marcy David

Fleming Feed Mill Ltd., Aliments Breton Inc., Glen Ford et Marcy David

Respondents

Intimés

**AND BETWEEN:**

**ET ENTRE :**

Lonza A.G.

Lonza A.G.

Applicant

Demanderesse

- and -

- et -

Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd. and Marcy David

Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd. et Marcy David

Respondents

Intimés

**AND BETWEEN:**

**ET ENTRE :**

Lonza A.G.

Lonza A.G.

Applicant

Demanderesse

- and -

- et -

Vitapharm Canada Ltd., Fleming Feed Mill Ltd., Aliments Breton Inc. and Kristi Cappa

Vitapharm Canada Ltd., Fleming Feed Mill Ltd., Aliments Breton Inc. et Kristi Cappa

Respondents

Intimées

**AND BETWEEN:**

**ET ENTRE :**

Sumitomo Chemical Co. Ltd.

Sumitomo Chemical Co. Ltd.

- 4 -

No. 29790

| | |
|---|---|
| Applicant | Demanderesse |
| - and - | - et - |
| Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd. and Marcy David | Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd. et Marcy David |
| Respondents | Intimés |
| AND BETWEEN: | ET ENTRE : |
| Degussa-Hüls AG, Degussa Corporation and Degussa Canada Inc. | Degussa-Hüls AG, Degussa Corporation et Degussa Canada Inc. |
| Applicants | Demanderesses |
| - and - | - et - |
| Vitapharm Canada Ltd., Fleming Feed Mill Ltd., Aliments Breton Inc. and Kristi Cappa | Vitapharm Canada Ltd., Fleming Feed Mill Ltd., Aliments Breton Inc. et Kristi Cappa |
| Respondents | Intimées |

| JUDGMENT | JUGEMENT |
|---|---|
| The applications for leave to appeal from the judgment of the Court of Appeal for Ontario, Numbers C38615, C38620, C38625 and C38626, dated March 13, 2003, are dismissed with costs. | Les demandes d'autorisation d'appel de l'arrêt de la Cour d'appel de l'Ontario, numéros C38615, C38620, C38625 et C38626, daté du 13 mars 2003, sont rejetées avec dépens. |

J.S.C.C.
J.C.S.C.