THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE LINERBOARD ANTITRUST LITIGATION ) ) ) ) THIS DOCUMENT RELATES TO: ) ) ) ALL ACTIONS ) ) | MDL No. 1261 (JED) |

**PLAINTIFFS' MEMORANDUM
REGARDING *BELL ATLANTIC V. TWOMBLY***

With the Court's permission, we write briefly to address *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955 (2007), which the Supreme Court decided after we submitted our Opposition to Defendants' summary judgment motions and which Defendants place at the center of their reply briefs. As we informed the Court at the May 30 status conference, *Twombly* is a case that discusses the standard for pleading a Section 1 antitrust violation. It touches on substantive antitrust law only to restate and apply the legal principles that we discussed in our Opposition. It does not alter or modify the summary judgment standard in any way nor does it overrule the Third Circuit's decisions regarding the applicability of *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).[1] As discussed below, the facts in *Twombly* are very different from the instant case and the outcome is completely consistent with the Third Circuit's application of *Matsushita*. Defendants either overstate *Twombly*'s significance or simply get it wrong.

*Twombly* has a unique factual background. It arises out of 1996 legislation requiring telephone companies – which had enjoyed years of monopoly power – to cooperate with upstart

---

[1] *Twombly* referred to *Matsushita* and summary judgment standards only in passing because those standards were not at issue. The parties in *Twombly* did not dispute the requirement of plausibility and the need for something more than merely parallel behavior to prove a conspiracy. *Twombly* at 1968.

competitors to provide access to the companies' infrastructure. *Id*. at 1961-62. The telephone companies did not willingly accept the obligations the legislation imposed and a class of consumers filed suit, alleging that the companies violated Section 1 of the Sherman Act by (1) engaging in "'parallel conduct' in their respective service areas to inhibit the growth of upstart" competitors and (2) not competing against each other outside their respective traditional geographic territories. *Id.* at 1962. The Second Circuit held that the Complaint was sufficient because the class did not need to allege "plus factors" so long as there was some theoretical set of facts "that would permit a plaintiff to demonstrate that the particular parallelism asserted was the product of collusion rather than coincidence." *Id.*

Reciting the well-established rule that parallel behavior alone generally "falls short" of conclusively showing a conspiracy, the Supreme Court overruled *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) insofar as it held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Accordingly, the Court reversed the Second Circuit, holding instead that a complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly* at 1968. The Court found both sets of allegations in the Complaint insufficient.

First, it found that the plaintiffs failed to show a "need for joint encouragement" because each company had an independent reason to keep the upstarts out of their territory. *Id.* at 1971. Put another way, the plaintiffs failed to make the threshold showing of a motive to conspire, which the courts treat as a prerequisite to infer a conspiracy. *See In re Flat Glass Antitrust Litig.*, 385 F.3d 350 n.11 (3d Cir. 2004) ("in order to establish illegal concerted action based on 'consciously parallel behavior, a plaintiff must show . . . the defendants were conscious of each other's conduct and that this awareness was an element in their decision-making process . . . '").

Second, the Court noted that in most industries "with low barriers to entry, sparse competition among large firms dominating geographical segments of the market could very well signify illegal agreement," but found that the telephone industry's unique history of "government-sanctioned monopolies" conclusively dispelled that inference. *Twombly* at 1971. Further, in alleging that the incumbents jealously guarded their territories, the plaintiffs actually pleaded independent reasons why the incumbents would not take the significant financial risk of expanding their business line into rival territories. *Id.*

In their Reply, Defendants focus on the language in *Twombly* stating that a "plaintiff's offer of conspiracy evidence must tend to rule out the possibility that the defendants were acting independently."[2] *Id.* at 1964. This is the very same language that we addressed at length in our Opposition (pages 6-10). In *Matsushita*, the Supreme Court explained what this somewhat nebulous language meant: "Thus, [plaintiffs] must show that the inference of a conspiracy is reasonable in light of the competing inferences of independent action or collusive action that could not have harmed [defendants]." 475 U.S. at 575. Similarly, in *Flat Glass*, the Third Circuit explained that it already explored in *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993), "exactly what inferences are circumscribed in a Section 1 case" under *Matsushita.*

> [W]e identified "two important circumstances underlying the [Supreme] Court's decision in *Matsushita"*: (1) "the plaintiffs' theory of conspiracy was implausible"; and (2) "permitting an inference of antitrust conspiracy in the circumstances 'would have the effect of deterring *significant* procompetitive conduct.'" In other words, "the Court stated that the acceptable inferences which can be drawn from circumstantial evidence vary with the plausibility of the plaintiffs' theory and the dangers associated with such inferences." (citations omitted) (emphasis in original).

*Id*. at 1232.

---

[2]   At times, Defendants have aggressively edited the quotation to omit the "tends to" portion of the language. *See* Joint Reply at 8.

Defendants also incorrectly argue that *Twombly* somehow confirmed that "no conspiracy should be inferred from ambiguous evidence or from mere parallelism when defendants' conduct can be explained by independent business reasons." Joint Reply at 7. Again, the Third Circuit has already addressed the subject:

> [T]he *Matsushita* Court did not hold that an antitrust defendant is entitled to summary judgment merely by providing *an* economic theory to justify its behavior. *See Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, --, 112 S.Ct. 2072, 2083, 119 L.E.2d 265 (1992) ("The [*Matsushita*] Court did not hold that if the moving party enunciates *any* economic theory supporting its behavior, regardless of its accuracy in reflecting the actual market, it is entitled to summary judgment." (emphasis in original));[3] *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 439 (9th Cir.1990) ("Nor do we think that *Matsushita* and *Monsanto* can be read as authorizing a court to award summary judgment to antitrust defendants whenever the evidence is plausibly consistent with both inferences of conspiracy and inferences of innocent conduct."), *cert. denied,* 500 U.S. 959, 111 S.Ct. 2274, 114 L.Ed.2d 725 (1991). Instead, the Court simply stressed that to survive summary judgment in the absence of direct evidence or strong circumstantial evidence of an agreement, a plaintiff must assert a theory that is plausible. *Matsushita*, 475 U.S. at 593-94. In this respect, then, *Matsushita* did not invent a new requirement for an antitrust plaintiff to meet, but merely articulated an established one, *i.e.,* the inferences drawn from the proffered evidence must be reasonable. *See Eastman Kodak Co.*, 504 U.S. at __, 112 S.Ct. at 2083.

*Petruzzi's* at 1231 (emphasis in original).

Any other rule "would amount to an absurd and legally unfounded burden to prove with 100% certainty that an antitrust violation occurred. The test states only that there must be some evidence which, if believed, would support a finding of concerted behavior." *Toys "R" Us, Inc. v. FTC*, 221 F.3d 928, 935 (7th Cir. 2000). Similarly, Judge Posner in *In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651 (7th Cir. 2002) observed:

---

[3] In *Rossi v. Standard Roofing Inc.*, 156 F.3d 452, 467 (3d Cir. 1998), the Third Circuit wrote: "while ambiguous conduct cannot create a triable issue of fact, when 'the alleged conduct is 'facially anticompetitive and exactly the harm the antitrust laws aim to prevent,' no special care need be taken in assigning inferences to circumstantial evidence'."

> evidence can be susceptible of different interpretations, only one of which supports the party sponsoring it, without being wholly devoid of probative value for that party. Otherwise what need would there ever be for a trial? The question for the jury in a case such as this would simply be whether, when the evidence was considered as a whole, it was more likely that the defendants had conspired to fix prices than that they had not conspired to fix prices.

*Id.* at 655-56.

*Twombly* did not purport to address these standards in any way. It is entirely different from the case at bar, both on the law and the facts. As we explained in our Opposition, this is much more than merely a "parallel conduct" case. We have alleged facially anticompetitive conduct and exactly the harm the antitrust laws aim to prevent. We have shown, *inter alia*, invitations to collude, sharing of proprietary information including future prices and company specific information, substantial collusive contacts, an admitted conspiracy to elevate containerboard prices internationally, and unprecedented output restrictions and price increases. Defendants' conduct was so inconsistent with their independent self-interest that it establishes a conspiracy, not just conscious parallelism. Moreover, unlike *Twombly*, there is no dispute that Defendants had a motive to collude. Indeed, the industry background is one of illegal, not legal, collusion. Thus, *Twombly* is irrelevant to the determination of the motions in this litigation.

Dated:  June 18, 2007                                  Respectfully submitted,

                                                       DICKSTEIN SHAPIRO LLP


                                                       By:    */s/*
                                                              Richard J. Leveridge
                                                              Elaine Metlin
                                                              James R. Martin
                                                              1825 Eye Street NW
                                                              Washington, DC  20006
                                                              (202) 420-2200

                                                       *On behalf of all Plaintiffs*

-6-

## CERTIFICATE OF SERVICE

      I, Jennifer Duncan Hackett, hereby certify that on this 18th day of June, 2007, I caused to be served a true and correct copy of the attached Plaintiffs' Memorandum Regarding *Bell Atlantic v. Twombly* upon counsel of record in these consolidated direct action cases via LexisNexis File & Serve.

/s/_____
Jennifer D. Hackett
Dickstein Shapiro LLP
1825 Eye Street, NW
Washington, DC  20006